[Crim. No. 18233. Second Dist., Div. One. Mar. 24, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMASA BUSTAMANTE, Defendant and Appellant.

COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Jane C. Liebman, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—A jury found defendant guilty of possession of heroin (§ 11500, Health & Saf. Code). She appeals from the judgment and order denying her motion under section 1538.5, Penal Code. ■ While the

order itself is not appealable, it is reviewable on an appeal from the judgment of conviction. (*People* v. *Jasso,* 2 Cal.App.3d 955, 962 [82 Cal.Rptr. 229].)

On October 17, 1969, between 6 and 7:30 p.m. Officers Waers and Marine approached apartment 3 at 4925 Slauson Avenue in order to execute a warrant authorizing a search thereof and of several persons, including defendant. They walked up the stairs leading to apartment 3 and found Ruben Armenta, one of the persons named in the warrant, sitting approximately two feet from the apartment door on the top step; they walked past him and knocked on the door. Within a few seconds a little girl came up the stairs, walked past Armenta and the officers and opened the door. Through the open door Officer Waers was able to see defendant and her husband sitting in the front room; he informed them that he was a police officer, had a search warrant and was going to enter the apartment in order to search it; he showed them the warrant and began the search which disclosed narcotics and narcotic paraphernalia concealed in various places, and a check stub bearing defendant's name and the address of the apartment in defendant's purse.

Appellant contends that the search of the apartment was illegal because the warrant authorizing it was invalid and the execution of the warrant failed to comply with section 1531, Penal Code. In any case, she claims that the evidence was insufficient as a matter of law to sustain her conviction.

 Appellant's attack on the validity of the warrant is directed to the legal sufficiency of the affidavit in support of the application therefor. In the affidavit Officer Waers stated that on September 19, 1969, (about one month before the search) he received a telephone call from a female, "Angie," who stated that defendant was furnishing dangerous drugs and narcotics to a runaway juvenile and other juveniles at 4925 Slauson Avenue, apartment 3, and that Ruben Armenta, who she said was a parole violator, was living there, using narcotics and peddling narcotics from that address; that a check of a police report on September 19 revealed that Arthur Marestein had died of an overdose of narcotics at the Slauson Avenue address about two weeks before (September 4); that on the same day (September 19) around 6 p.m. on the basis of the foregoing, Officers Kline and Zink went to the Slauson Avenue address and arrested five persons including defendant for being under the influence of narcotics; all except defendant were juveniles; that on October 13 he read a police report which showed that on September 29, 1969, around 8:30 p.m. Benedict Cotionia had been furnished three seconal capsules by a female Latin named "Tommy" at 4925 Slauson Avenue, apartment 3; that the next

day (October 14) he checked with the department of corrections which informed him that Ruben Armenta was on parole on a narcotic (heroin) conviction (§ 11500, Health & Saf. Code) and a parole violator; he then obtained "mug" shots of Armenta and defendant from the police department; that he then staked out the Slauson Avenue address and on October 15 between 7 and 9:45 p.m. observed Ruben Armenta at the apartment; the next day (October 16) around 8:30 p.m., he observed a male Latin about 35, who appeared to be normal, enter the apartment and in 10 minutes come out excited and unsteady on his feet; while this man was inside the apartment a second man, who also appeared to be normal, entered, stayed 45 minutes and then emerged with Ruben Armenta and a female Latin, all three of whom appeared to be under the influence of some type of dangerous drug or narcotic because they all staggered, swayed and assisted one another down the stairs; that the next day (October 17) "Angie" again called him and said that a narcotics party was to take place at the Slauson Avenue address at 7 o'clock that evening and dangerous drugs and narcotics were at the apartment; and that the utilities in the apartment were registered to Frank Bustamante and the telephone to Mary Anne Bustamante. The search warrant was executed by the officers on that day (October 17, 1969) around 7:30 p.m.

The issue is whether the affidavit as a matter of law sets forth sufficient competent evidence supportive of the magistrate's finding of probable cause. (*People* v. *Benjamin*, 71 Cal.2d 296, 302 [78 Cal.Rptr. 510, 455 P.2d 438].) While it is true, as argued by appellant, that the informant's tip alleged in the affidavit was itself insufficient to support the warrant under the "two-pronged" test announced in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], since there is nothing in the affidavit to indicate that Angie spoke from personal knowledge, this deficiency does not render her tip "so insubstantial that it could not properly have counted in the magistrate's determination" in light of the remaining allegations of the affidavit which would permit the suspicions engendered by Angie's information to ripen into a judgment that defendant and the narcotics would be in the apartment on the evening of October 17. (*Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641, 89 S.Ct. 584].) Too, although information from those allegations may in itself be insufficient to support the warrant, combined with that given by the informant there is sufficient cause set up in the affidavit to believe that the narcotics and defendant would be where she said they would be (*People* v. *Scott*, 259 Cal.App.2d 268, 275-276 [66 Cal.Rptr. 257]; *People* v. *West*, 237 Cal.App.2d 801, 807 [47 Cal.Rptr. 341]; *People* v. *Layne*, 235 Cal.App.2d 188, 191 [45 Cal.Rptr. 110]) and justified issuance of the search warrant. A comparison of the case at bench with *Spinelli* reveals

a crucial difference. *Spinelli* involved a tip from an informant corroborated only as to unessential details which were not themselves incriminatory; here all of the corroborative information tended to substantiate the very portions of the informant's accusations which were incriminatory. The address given by the informant, who was not totally untested since she had previously conveyed information to police which led to the arrest of several including defendant, had a history as a center of narcotics activities—five weeks before Arthur Marestein had died there from an overdose of narcotics; one month earlier, five persons, including defendant, had been arrested there for narcotics violations; two weeks earlier a female at that address named "Tommy" (undoubtedly a nickname for defendant's given name, Tomasa) had supplied seconal capsules to Benedict Cotionia, one of the persons known to live at or frequent defendant's apartment; several days before Ruben Armenta, who had a prior narcotics conviction, was at the Slauson Avenue address; and as recently as the day before the warrant was issued something powerful enough to give a man symptoms of narcotics use in a mere ten minutes had been available and in defendant's apartment, and a large enough quantity was available therein to place three others including Ruben Armenta under the influence of narcotics.

Appellant argues that none of the foregoing tends to show that on the very day the warrant was obtained and executed narcotics would be found in the apartment but she ignores the obvious fact that it indicates more than mere isolated instances of unlawful activity on the part of the occupants of the apartment, and the cumulative effect of such conduct. The facts suggest a constant course of illegal activity continuing from over a month before, up until the very day before the informant's second tip. Thus, granting that the information provided by the informant and reflected in the affidavit by means of hearsay statements was insufficient to justify issuance of the warrant, we conclude that the combination of that information with the officer's independent investigation and own observations produced a state of facts sufficient to lead the magistrate to believe that defendant and the narcotics were where Angie said they would be on the day in question; and that the affidavit was sufficient.

■■■ Also without substance is appellant's argument that the execution of the warrant was defective because the officers who executed the same failed to comply with section 1531, Penal Code, which provides that only after a peace officer has announced his authority and purpose and been refused admittance may he break in and enter the premises to be searched. It is undisputed that the officers announced their identity and purpose when they arrived at the door; the only thing they did not do was wait for a refusal of admittance before entering. It is also undisputed that the officers did not break in; a child opened the door. In this case we do not

think that the omission of a minor technicality cancels out the full compliance with the really significant requirements of the statute. ■ The purpose of section 1531 and its companion section 844, is essentially two-fold—first, the statutes are intended to safeguard to the fullest possible extent the privacy of the citizen in his home, and second, they seek to preclude violent confrontations between startled householders and police officers whose entry is unannounced and unexplained. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 292-293 [78 Cal.Rptr. 504, 455 P.2d 432].) ■ Neither purpose was frustrated by the conduct of the officers—the invasion of privacy entailed by the search of the apartment was not at all increased by the absence of an opportunity to refuse admittance to the officers; neither was the risk of violent resistance to the officers' entry by defendant and her husband heightened thereby. *People* v. *Hamilton,* 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681], relied on by appellant is clearly distinguishable on its facts. There the officers knocked and were admitted by a little girl who in response to their request to see one of the two adults believed to be living there led the officers through the house to the door to the bedroom where they observed contraband and arrested the occupants; at no time did they announce their purpose or authority. Here the door to the apartment was opened from the outside by a child but through the open door the adult occupants could be seen immediately inside the front door and the officers in fact stated their identity and their mission before moving over the threshold.

■ Appellant's next contention that the evidence is insufficient to show that she exercised dominion and control over the contraband found in the apartment and had knowledge of its presence and its narcotic nature is so devoid of merit that no extensive discussion is required. All three of these elements were established by substantial evidence. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Redrick,* 55 Cal.2d 282, 289 [10 Cal.Rptr. 823, 359 P.2d 255].) Possession need not be exclusive; and the elements may be established by circumstantial evidence and any reasonable inferences drawn therefrom. (*People* v. *White,* 71 Cal.2d 80, 82-83 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Estrada,* 234 Cal.App.2d 136, 155 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].) Bindles of heroin were discovered in a man's sport coat and in a woman's suit jacket hanging in the closet of one of the two bedrooms in defendant's apartment; in the dresser in defendant's bedroom among women's clothing in one of the drawers, two hypodermic needles were found (*People* v. *Calderon,* 205 Cal.App.2d 566, 569 [23 Cal.Rptr. 62]) and on top of the dresser were balloons used in packaging heroin for sale (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600]); and a hypodermic outfit and milk sugar (used by dealers and addicts to cut raw heroin) were

uncovered in the kitchen. Mary, defendant's daughter, admitted that defendant did not share her bedroom with anyone else and that before his death Marestein had slept on the sofa. A check stub, probably from a welfare check and bearing defendant's name and address of the apartment, was found in her purse. The foregoing evidence is more than ample basis for an inference that defendant alone or jointly with others possessed the contraband and that she did so with knowledge of its presence and character. (*People* v. *White, supra,* 71 Cal.2d 80, 83; *People* v. *Roth,* 261 Cal.App.2d 430, 445 [68 Cal.Rptr. 49]; *People* v. *Estrada,* 234 Cal. App.2d 136, 156 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].)

Appellant relies on *People* v. *Monson,* 255 Cal.App.2d 689 [63 Cal. Rptr. 409], and *Delgado* v. *United States* (9th Cir. 1964) 327 F.2d 641; in each case narcotics were found in an area in which both occupants of a jointly occupied apartment had access. In neither case was there an indication from the nature of the location (a closet in *Monson* and a nightstand in *Delgado*) as to which occupant might have placed the narcotics there. Here the contraband was found in and among articles of women's apparel from which fact it could readily be inferred that the woman who used the clothing had placed it there. There was sufficient evidence from which the jury could conclude that the women's clothing belonged to defendant.

The judgment is affirmed; the purported appeal from the order is dismissed.

Wood, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1971. Peters, J., was of the opinion that the petition should be granted.