[No. H002369. Sixth Dist. Nov. 3, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANCES LOUISE TACY et al., Defendants and Respondents.

## COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Appellant.

Rose & Arnold, Ronald W. Rose, Mark A. Arnold, Carleen R. Arlidge, John M. Wadsworth, Jean O. Harris and William W. Burns for Defendants and Respondents.

## OPINION

**BRAUER, J.**—The People appeal from an order of the superior court which denied their motion to reinstate a criminal complaint. (Pen. Code, § 1238, subd. (a)(9).) The sole question confronting us is whether police officers, in executing a search warrant, sufficiently complied with the

"knock-notice" requirements of Penal Code section 1531. We conclude that they did, and we therefore reverse.

Penal Code section 1531 reads thus: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

I.

In July of 1985 Detective Kevin Kyle was a member of the Specialized Crimes Action Team (S.C.A.T.) in Santa Clara County. That team specialized in enforcement of the narcotics laws. Kyle, in an undercover capacity, became acquainted with one Fawn Tate, from whom he purchased methamphetamine and other drugs on several occasions. On July 29, 1985, Kyle asked Tate to procure for him an eighth of an ounce of methaphetamine, and provided her with $180 in bills, the serial numbers of which had been recorded.

At Tate's direction, Kyle drove her to a certain apartment complex in Campbell. Tate pointed out Apartment 1 as her destination. She left the car with the marked funds, entered Apartment 1, and returned a few mintutes later bearing a plastic bag containing methampetamine. She told Kyle that her suppliers were a sister and brother named "Frankie" and "Doug." Equipped with this information Kyle prepared an affidavit, and secured from the municipal court a warrant to search Apartment 1. The search warrant was issued on August 2, 1985, apparently during regular business hours.

Then the plot thickened. In the late afternoon of August 2, 1985, an informant told Kyle that Tate had recently learned Kyle was a cop. Learning this, Kyle sent a police officer to surveil Tate's residence. Then Kyle telephoned Tate and talked with her. From the discussion he concluded that Tate did indeed know he was a cop. Immediately after the telephone conversation the surveilling officer advised Kyle that Tate was driving away from her residence. Fearing that Tate was on her way to warn the occupants of Apartment 1, Kyle gave instructions to have her arrested for sales of methamphetamine. The arrest was promptly made, and Tate was brought to the police department. According to Kyle, Tate's arrest occurred "between an hour and two hours" before the search warrant was served.[1]

---

[1] At the time of the preliminary hearing below, Fawn Tate was awaiting sentencing on charges involving the sale of controlled substances (Health & Saf. Code, § 11379).

At 9:46 p.m. on the same date (Aug. 2, 1985) Kyle and five other police officers repaired to Apartment 1. They came equipped with the search warrant and its supporting affidavit. Two of the officers were in regulation uniform. Kyle himself was "wearing a blue windbreaker that has a badge stenciled on the left chest and I don't recall exactly what the words are on the front of the jacket. On the back it says 'Santa Clara Police.' I had my police badge positioned at the top of the jacket just below my neck. I was wearing my police-duty belt and Levi's [*sic*] to the best of my recollection." According to Kyle, the remaining officers "were dressed in a fashion very similar to the way I was dressed."

Kyle had his revolver drawn. He did not recall whether the other officers also had drawn their weapons, but he testified that "it's standard practice for us to have them drawn. On direct examination he described the entry thus:

"Q. And how did you proceed?

"A. I approached the residence with several other officers and I approached the front and only door and found it standing open. As soon as I stood in front of the door I made contact with a person in the living room directly on the other side of that door and made eye contact with that person.

"Q. Was there a door there?

"A. There was a door, yes, but it was open and there was a screen door that was closed.

"Q. Now, when you approached the screen door you said you could see someone in the house?

"A. Yes.

"Q. And was it a man or a woman?

"A. It was a man.

"Q. And what was he doing?

"A. He was laying [*sic*] on the couch viewing television.

"A. And what did you do?

"A. I made eye contact with that person, identified myself as a police officer, stated that I held a search warrant for the premises and would be entering to execute same.

"Q. Did he make any moves?

"A. No, he was directed not to.

"Q. Did you ask him if you could come in?

"A. No.

"Q. And when you directed him not to move, did he obey?

"A. Yes.

"Q. And you entered the house?

"A. That's correct." On cross-examination Kyle testified to the following:

"Q. Now, as you approached the door, where—you did state that you knocked on the door, did you not?

"A. I did not.

"Q. You didn't knock?

"A. No.

"Q. Okay. How is it that you drew your attention to Mr. Cannon? How did you draw Mr. Cannon's attention to you?

"A. As I recall, as soon as I appeared in the doorway his attention was directed in my direction and from that point on we had eye contact.

"Q. Did you state anything to him at that time and if you did I'd like to know specifically what you stated.

"A. Yes. I stated that I was a police officer and that I possessed a search warrant for the premises and I told him to remain exactly where he was.

"Q. All right. And then what did you do?

"A. I opened the screen door and entered the residence.

"Q. How long did you wait before giving your announcement and entering?

"Q. Just as long as it took me to open the door after I had already said all of the above things.

"Q. So we are basically talking a matter of seconds between the end of your announcement and the entry?

"A. Yes."

Cannon was handcuffed, and remained on the couch. A search of the apartment revealed (1) a substantial quantity of methamphetamine packaged in baggies; (2) a substantial amount of currency, including the $180 Kyle had given Fawn Tate five days earlier; and (3) a checkbook and driver's license belonging to appellant Tacy. While the search was in progress Tacy, appellant Cannon's sister, appeared on the scene, and she too was arrested.

## II.

The foregoing facts were presented to a magistrate at a hearing which combined a preliminary examination with a motion to suppress evidence. At the conclusion of the hearing the magistrate refused to commit the defendants. She expressly found that there had been substantial compliance with Penal Code section 1531. Nevertheless, relying on *People* v. *Neer* (1986) 177 Cal.App.3d 991 [223 Cal.Rptr. 555], she ruled that there had been "a violation of 1531 because there was a refusal to request admission." She further ruled that no exigency existed "because of the delay in time and the fact that Tacy [*sic*: Tate] [was] already in custody at the time of the execution of the search warrant." The motion to suppress evidence was granted, Tacy and Cannon were discharged, and bail was exonerated.

The superior court agreed, apparently for different reasons. The judge conceded that the conduct of the officers "certainly would serve some of the purposes of the knock notice statute in what you are trying to do is prevent a violent reaction. The identity is not an issue because the police officer is standing there in uniform. [¶] But knock notice contains a refusal requirement which is not a perfunctory requirement. It is part of the statute, and unless compliance is excused, there has to be compliance. [¶] And there's no way, shape or form that there is any type of compliance with the refusal requirement in this case, nor is there any showing that there is exigency which justified dispensing it. [¶] On the state of the law, I'm not going to comment on the wisdom of it, but on the state of the law, I don't see how

this particular conduct can be deemed substantial compliance. The motion to reinstate the complaint is denied."

## III.

"On review under [Penal Code] section 871.5, the superior court is bound by the magistrate's findings if they are supported by substantial evidence. But it is the duty of the superior court, and ours as well, to measure those facts, as found by the magistrate, against the constitutional standard of reasonableness. The constitutional issue is solely a question of law and if the magistrate mistakenly concluded that a search was unconstitutional that conclusion is also erroneous 'as a matter of law.'" (*People* v. *Salzman* (1982) 131 Cal.App.3d 676, 684 [182 Cal.Rptr. 748].)

## IV.

In *People* v. *Neer, supra,* 177 Cal.App.3d 991, police officers procured a search warrant for Neer's home. Four officers went to the premises to serve the warrant. They detained Neer in the front yard, but at that point they were unaware of his identity. One of the officers shouted: "'We're the police department, don't move . . . we have a search warrant.'" (*Id.,* at p. 994.) An officer named Klein, wearing a police raid jacket and hat, approached the front door. "The front door was open and lights were on inside. Klein approached until he reached the closed screen door. He could see a woman with a child sitting on a couch and a man standing in the kitchen area. Klein identified himself as a police officer and stated he had a search warrant. He 'opened the door immediately' and went in. Klein testified he entered because he believed the occupants had heard both announcements and feared they would flee, destroy contraband or arm themselves." (*Id.,* at p. 995.) A search of the residence produced narcotics. Neer was arrested, and he thereafter moved to suppress the evidence. His motion was denied; he pled guilty to several controlled substance violations; and he then appealed pursuant to the provisions of Penal Code section 1538.5, subdivision (m).

A divided appellate court (Division Three of the Fourth Appellate District) reversed Neer's conviction. The majority held: "Klein's entry violated section 1531. First, the facts did not support a reasonable belief exigent circumstances permitted him to force entry. Second, he could not reasonably believe he had been refused entry by the occupants." (*Id.,* at p. 995, fn. omitted.) The majority further held that the advent of article I, section 28, subdivision (d) of the California Constitution (a part of Prop. 8) did not abrogate a previous California Supreme Court decision holding that an entry effected in violation of Penal Code section 1531 renders any

subsequent search and seizure unreasonable within the meaning of the Fourth Amendment to the United States Constitution. (*Id.,* at pp. 997-1001.)

A spirited dissent argued (1) there is no United States Supreme Court case which holds that an entry made in violation of "knock-notice" requirements renders any subsequent search and seizure automatically unreasonable within the meaning of the Fourth Amendment; (2) there are lower federal court decisions which have held that strict compliance with "knock-notice" rules is not always necessary; and (3) article I, section 28, subdivision (d) of the California Constitution compels the conclusion that "[u]nless federal authority *requires* suppression for a breach of the Fourth Amendment, the exclusionary rule may not be applied." (*Id.,* at p. 1003, italics in original.)

In this appeal the People urge us, in essence, to adopt the views of the *Neer* dissent and to hold the entry in this case was reasonable under the Fourth Amendment. Respondents Tacy and Cannon, of course, would have us follow the *Neer* majority. With respect for our colleagues in the Fourth Appellate District, we decline to follow *Neer,* although we find wisdom in portions of both the majority and dissenting opinions.

### V.

Our analysis begins with *Duke* v. *Superior Court* (1969) 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628]. In that case a wife complained to the police that she had been beaten and otherwise abused by her husband. She told the police that she had observed a bottle of red pills in the bathroom medicine cabinet that she had never seen before; that her husband was at home and asleep; and that the front door of the house was unlocked. Equipped with this information, but without any sort of warrant, two officers went to the Duke home. The opinion reads: "The officers knocked on the front door, waited about 30 seconds, heard no response or any other noise, did not identify themselves as police officers, did not verbally demand admittance, did not explain the purpose for which they desired admittance, opened the closed but unlocked door, and walked into petitioner's bedroom where he was sleeping. The officers approached petitioner, asking him if his name was Paul Duke. Petitioner responded in the affirmative. After speaking briefly with petitioner, Officer Amescua went into the bathroom of the residence, looked into the medicine cabinet, and found a bottle of red pills on the third shelf. The officers placed petitioner under arrest. A forensic chemist later identified the pills as capsules of sodium secobarbital, a restricted dangerous drug which induces sleep." (*Id.,* at p. 318.) ▮▬▮▬ Duke's subsequent motion to suppress the evidence, based upon an alleged violation

of Penal Code section 844, was denied.[2] He thereupon sought a writ of mandate.

The California Supreme Court granted the writ, noting that "[t]he police officers knocked and waited no more than 30 seconds before opening the closed but unlocked door; they did not comply with the terms of [Penal Code] section 844 in that they failed (1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance." (*Id.,* at p. 319; fn. omitted.) Therefore the police "neither fully complied with all the requirements of section 844 nor substantially complied with the section's statement of purpose requirement . . . ." (*Id.,* at p. 321.) The court held that "[t]he purposes and policies underlying [Penal Code] section 844 are fourfold: (1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citations]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder." (*Id.,* at p. 321.)

Then the court went on to say this: "Since we have concluded that the police officers did not comply with the requirements of [Penal Code] section 844 and did not possess any excuse for failing to comply with that section, we must hold that an entry effected in violation of the provisions of section 844 *or its companion section 1531* renders any subsequent search and seizure *'unreasonable' within the meaning of the Fourth Amendment.* [Citations, to California cases.] As a consequence, an unexcused failure to fulfill the knock and notice requirements delineated by section 844 nullifies the subsequent search and requires exclusion of the evidence obtained. [Citations, again to California cases.]" (*Id.,* at pp. 324-325, italics ours.)

*Duke* was one of the bones of contention in *People* v. *Neer, supra,* 177 Cal.App.3d 991. The majority in *Neer* felt compelled to follow *Duke,* and

---

[2] Penal Code section 844 reads thus: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

"The requirement the occupants *refuse* admittance before a forced entry is permitted distinguishes [Penal Code] section 1531 from section 844. (See *People* v. *Schmel* (1975) 54 Cal.App.3d 46, 50-51 [126 Cal.Rptr. 317].)" (*People* v. *Neer, supra,* 177 Cal.App.3d at p. 996, fn. 3, italics in original.) But "[t]he two sections are governed by similar principles of law and for many purposes the cases applying one or the other of the statutes may be interchangeably cited." (*People* v. *Peterson* (1973) 9 Cal.3d 717, 722 [108 Cal.Rptr. 835, 511 P.2d 1187], fn. 7; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432], fn. 6.)

declined to hold that Proposition 8 (i.e., art. I, § 28, subd. (d) of the Cal. Const.) abrogated the *Duke* decision. But the dissent in *Neer* opined that Proposition 8 compelled a reexamination of *Duke* and a resort to lower federal court decisions which hold that strict compliance with "knock-notice" requirements is not constitutionally compelled. The justices debated the question of whether, in the light of Proposition 8, the California Supreme Court still retains any authority to declare a violation of the "knock-notice" rules to be contrary to the United States Constitution, in the absence of any countervailing authority provided by the United States Supreme Court. The majority said yes, the dissent said no. In this appeal the People say no, the respondents say yes.

On this issue we side with the *Neer* majority.

We take the liberty of quoting from Professor Wayne R. LaFave's treatise on Search and Seizure (2d ed. 1987), chapter 4, section 4.8, subdivision (a), pp. 271-272 (omitting the footnotes): "To date, the United States Supreme Court has not had occasion to rule specifically upon the question of whether the Fourth Amendment compels that notice ordinarily be given in the execution of a search warrant. However, in *Ker* v. *California* [(1963) 374 U.S. 23 (10 L.Ed.2d 726, 83 S.Ct. 1623)] the Court did deal, albeit somewhat ambiguously, with the closely analogous question of notice prior to entry for purposes of making an arrest, and it has generally been assumed (correctly, it would seem) that *Ker* is also applicable to search warrants. In *Ker,* state police entered the defendant's premises without prior notice and arrested him for possession of marijuana, a procedure which had been upheld by the California courts on the ground that the statutory notice provision was inapplicable because of the need to prevent destruction of contraband. Writing for only four members of the Court, Justice Clark stated: 'Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police. We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, *was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment.*' [Italics ours.] Justice Harlan concurred in the result on the ground that state searches and seizures should be judged by 'concepts of fundamental fairness,' while the four dissenters in *Ker* argued that '*the Fourth Amendment is violated* by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose or (2) where the officers are justified in the belief that persons within are in

imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock on the door) are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.'" [Italics ours.]

In this way, without explicitly so stating, the United States Supreme Court has given a broad hint to the effect that "knock-notice" requirements are dictated by the standard of "reasonableness" embedded in the Fourth Amendment, and that an unreasonable violation of those requirements transgresses the Amendment. The Ninth Circuit Court of Appeals has held that the requirements of the federal "knock-notice" statute (18 U.S.C § 3109)[3] have, "at least to some extent," been incorporated into the Fourth Amendment. (*United States* v. *Bustamente-Gamez* (9th Cir. 1973) 488 F.2d 4, 9, cert. den. (1974) 416 U.S. 970 [40 L.Ed.2d 559, 94 S.Ct. 1993]; accord, *United States* v. *Valenzuela* (9th Cir. 1979) 596 F.2d 824, 830, cert. den. (1979) 441 U.S. 965 [60 L.Ed.2d 1071, 99 S.Ct. 2415].)

■ We think the foregoing cases provide ample federal authority for the proposition that statutory "knock-notice" requirements, either federal or state, have their roots in the concept of "reasonableness" which lies in the core of the Fourth Amendment to the United States Constitution. Therefore, in our opinion, the California Supreme Court followed federal guidelines in *Duke* when it held that an insubstantial effort to comply with "knock-notice" requirements violates the Fourth Amendment. Proposition 8 (i.e., Cal. Const., art. I, § 28, subd. (d)), which in pertinent part provides that "relevant evidence shall not be excluded in any criminal proceeding," does not compel us to reassess *Duke*; instead, it tells us that "relevant evidence shall not be excluded in any criminal proceeding" unless the United States Constitution forbids its use. (*In re Lance W.* (1985) 37 Cal.3d 873, 888, 890 [210 Cal.Rptr. 631, 694 P.2d 744].)

Furthermore, in *People* v. *Jacobs* (1987) 43 Cal.3d 472 [233 Cal.Rptr. 323, 729 P.2d 757]—a post-Proposition 8 case—the California Supreme Court reiterated its holding in *Duke*.[4] As an intermediate appellate court we

---

[3] Section 3109, in title 18 of the United States Code, provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

[4] "Noncompliance with [Penal Code] section 844 renders any search and seizure following the entry unreasonable within the meaning of the Fourth Amendment (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 325)." (*People* v. *Jacobs, supra,* 43 Cal.3d at p. 484, fn. omitted.) *Jacobs* was a case in which the police, equipped with a valid arrest warrant, were admitted into the defendant's home by the defendant's 11-year-old daughter, at a time when the

are bound to follow the decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Even if we disagreed with our Supreme Court, we would be obliged to disagree in private while following that court's decisions in print.[5]

Accordingly we conclude that *Duke* v. *Superior Court, supra,* 1 Cal.3d 314, 325, retains its vitality despite the advent of Proposition 8.

## VI.

But our inquiry does not end there. In *People* v. *Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187] police officers secured a warrant to search the defendant's person, residence, and vehicles for narcotics. The defendant was arrested some distance from his home. Immediately after his apprehension the arresting officers went to the defendant's residence. There an inner front door (i.e., an opaque one) was open, but an unlatched screen door was closed. Through the screen door an officer was able to see "into the living area where in plain view he observed a man and a woman seated and engaged in conversation.

"The officer testified that while he was standing at the doorway he knocked several times but neither party within the dwelling responded. After waiting approximately one minute he opened the screen door, stood at the threshold, identified himself and, after stating he had a warrant for a search of the premises, entered." (*Id.,* at p. 721, fn. omitted.) A subsequent search of the residence produced heroin and marijuana.

Following a denial of his motion to suppress evidence, the defendant pled guilty to possession of heroin. On appeal he contended that the search was invalid because the officers had not strictly complied with the procedural sequences set forth in Penal Code section 1531. The California Supreme Court disagreed, and affirmed the conviction. The court held that "[t]he officers committed a technical breaking by opening the unlatched screen door before such notice was given. We must resolve whether failure to comply strictly with the step-by-step direction of the statute can be deemed

---

defendant was not present. The entry was held illegal because (1) the daughter's consent to enter was invalid, and (2) the police lacked reasonable grounds to believe the defendant was at home. Three justices (Chief Justice Lucas, Associate Justices Mosk and Panelli) dissented on the ground that the officers had substantially complied with the "knock-notice" requirements, and therefore the policies underlying Penal Code section 844 had been fully served. (*Id.,* at pp. 484-486.)

[5] The dissent in *People* v. *Neer, supra,* 177 Cal.App.3d 991, argued that "it is not the place of an intermediate appellate court to ignore the will of the electorate as interpreted by a higher court. We ought to swallow the hemlock now and have done with it." (*Id.,* at p. 1003.)

to constitute substantial compliance." (*Id.,* at p. 723.)[6] After reiterating the purposes and policies underlying Penal Code section 1531,[7] the court went on to say this: "When police procedures fail to conform to the precise demands of the statute but nevertheless serve its policies we have deemed that there has been such substantial compliance that technical and, in the particular circumstances, insignificant defaults may be ignored." (*Id.,* at p. 723.) Then the opinion continued: "The question then is whether Officer Kalm by delaying his announcement until after he had opened the screen door frustrated or made nugatory any of the purposes and policies previously enumerated. We note that the interior of the residence and the occupants therein were visible to any member of the public who, like the officers, had proper reason to enter onto the premises and approach the visibly open doorway. Thus, no right of privacy was infringed as the opening of the screen door revealed nothing more than was already exposed to the officers' view and they did not physically intrude into the home until after the announcement.

"It is equally clear that no greater risk of violence to any person on the premises was created, as at all times after approaching and knocking the officers could clearly observe the occupants within the interior and take precautionary measures if necessary. Nor can it be argued successfully that there was a greater risk that the occupants might respond violently by reason of ignorance of the officers' identity and purpose, as the officers were immediately visible and announced their purpose to the occupants who were thus made aware of the situation and its demands. Assuredly the personal safety of the officers, as in the case of the occupants, was not subjected to any increased danger. We conclude that in the particular circumstances of this case there was substantial compliance with [Penal Code] section 1531, and that there also has been compliance with the purposes and policies set forth in *Duke* v. *Superior Court, supra,* 1 Cal.3d 314 and *Greven* v. *Superior Court* [1969] 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432]. Accordingly, the contraband found in defendant's residence was lawfully seized and the trial court properly denied defendant's motion under [Penal Code] section 1538.5." (*People* v. *Peterson, supra,* 9 Cal.3d at pp. 723-724.)

Reading the *Duke* and *Peterson* decisions together, it appears to be the view of the California Supreme Court that not every technical violation of

---

[6] Contrary to the Attorney General's contention, the opening of an unlatched screen door constitutes a "breaking." (*Sabbath* v. *United States* (1968) 391 U.S. 585, 589-590, fn. 5 [20 L.Ed.2d 828, 833-834, 88 S.Ct. 1755]; *People* v. *Rosales* (1968) 68 Cal.2d 299, 303 [66 Cal.Rptr. 1, 437 P.2d 489]; *United States* v. *Bustamente-Gomez, supra,* 488 F.2d at pp. 9-10; *United States* v. *Teti* (D.C. Pa. 1976) 422 F.Supp. 128, 135, fn. 7; *United States* v. *Poppitt* (D.Del. 1964) 227 F.Supp. 73, 80.)

[7] Citing *Duke* v. *Superior Court, supra,* 1 Cal.3d at page 321. (*People* v. *Peterson, supra,* 9 Cal.3d at p. 723.) part V of this opinion, *ante,* pages 1410-1414.

the "knock-notice" rules renders an entry "unreasonable" within the meaning of the Fourth Amendment.

California Courts of Appeal have recognized the concept of substantial compliance in cases analogous to the one before us. For example, in *People v. Bustamante* (1971) 16 Cal.App.3d 213 [94 Cal.Rptr. 64] (a case which preceded *Peterson*), two officers equipped with a search warrant went to the defendant's residence. "They walked up the stairs leading to apartment 3 and found Ruben Armenta, one of the persons named in the warrant, sitting approximately two feet from the apartment door on the top step; they walked past him and knocked on the door. Within a few seconds a little girl came up the stairs, walked past Armenta and the officers and opened the door. Through the open door Officer Waers was able to see defendant and her husband sitting in the front room; he informed them that he was a police officer, had a search warrant and was going to enter the apartment in order to search it; he showed them the warrant and began the search which disclosed narcotics and narcotic paraphernalia concealed in various places . . . ." (*People* v. *Bustamante, supra,* 16 Cal.App.3d at p. 216.) A jury found the defendant guilty of possessing heroin. On appeal she contended, among other things, that the execution of the warrant was defective because the arresting officers failed to comply with the provisions of Penal Code section 1531. The Court of Appeal disagreed, reasoning thus: "It is undisputed that the officers announced their identity and purpose when they arrived at the door; *the only thing they did not do was wait for a refusal of admittance before entering.* It is also undisputed that the officers did not break in; a child opened the door. In this case we do not think that the omission of a minor technicality cancels out the full compliance with the really significant requirements of the statute. The purpose of [Penal Code] section 1531 and its companion section 844, is essentially two-fold—first, the statutes are intended to safeguard to the fullest possible extent the privacy of the citizen in his home, and second, they seek to preclude violent confrontations between startled householders and police officers whose entry is unannounced and unexplained. [Citation.] Neither purpose was frustrated by the conduct of the officers—the invasion of privacy entailed by the search of the apartment was not at all increased by the absence of an opportunity to refuse admittance to the officers; neither was the risk of violent resistance to the officers' entry by defendant and her husband heightened thereby." (*Id.,* at pp. 218-219, italics ours.)

In *People* v. *Brownlee* (1977) 74 Cal.App.3d 921 [141 Cal.Rptr. 685] peace officers equipped with arrest warrants approached the front entrance of a residence. The front door was open but the screen door was closed. The defendant was lying on a couch in the living room. As the officers approached, another party—"Mr. Perkins"—came to the screen door from

the inside of the house, and was standing behind it when the officers arrived. One of the officers said he was a police officer; that he had a warrant for the arrest of the defendant; and he asked Perkins to open the door. Perkins opened the screen door and stepped back into the living room; whereupon the officers entered. A jury convicted the defendant on several burglary counts. On appeal he contended (among other things) that the officers had failed to "knock" in compliance with Penal Code section 844. The Court of Appeal, affirming the conviction, disagreed and said this: "There was substantial evidence from which the trial court could conclude that [Officer] Purington properly identified himself to Perkins as a police officer and properly stated the purpose of his visit which was to arrest Brownlee on three arrest warrants then in the possession of Purington or other officers present. The court could conclude under the circumstances that the front door was open and Perkins was standing at the screen door and engaged Purington in conversation; that 'knocking' would have been an act of redundancy which was wholly unnecessary. The purpose of 'knocking' is to get the attention of someone in the house and to thereby induce them to come to the door. The object of knocking had been achieved when Perkins stood at the open door. The trial court could and did properly conclude that there was a legally sufficient compliance with the requirements of Penal Code section 844. [Citations.]" (*Id.,* at p. 929.)

In *People* v. *LaJocies* (1981) 119 Cal.App.3d 947 [174 Cal.Rptr. 100] a parole agent arrested a parolee at the parole office. Then the agent enlisted the assistance of police officers to conduct a search of the parolee's residence. The peace officers approached the front door and knocked. The parolee's wife opened the door, apparently accompanied by what the opinion describes as "her dogs." The officers identified themselves, explained that they intended to make a search of the house in accord with the conditions of her husband's parole, and asked her to put "her dogs" in the back yard. While the wife was thus engaged the officers opened a screen door and entered the residence. A subsequent search disclosed contraband of various kinds, and so the wife was arrested. Thereafter the parolee and his wife moved to suppress the evidence on the ground (among others) that the peace officers had failed to comply with the "knock-notice" rules. When this motion was denied, both defendants entered pleas of guilty, and then appealed pursuant to the provisions of Penal Code section 1538.5, subdivision (m). The Court of Appeal upheld the conviction; in pertinent part the opinion reads thus: "In our view, the underlying polices of section 1531 were not frustrated by the officer's conduct in the present case. The policy considerations behind the statute are protection of the individual's right to residential privacy, and the avoidance of situations conducive to the risk of violence to occupants or police officers which would often attend entry by an unknown intruder. [Citations.] Here, neither appellant's privacy nor a

violent confrontation was threatened by the officers' failure to delay their entry into the residence.

"Sharon knew of the officers' purpose, and by her actions implicitly acquiesced in the entry. Moreover, the intrusion upon her privacy was not made greater because the officers entered before she returned from the rear of the residence. Ron's privacy was also not infringed upon by the manner in which the residence was entered. Ron had already been arrested, and was in custody outside the residence. Further, as a parolee, he had waived his claim to privacy in his home. [Citation.]

". . . . . . . . . . . . . . . . . . . .

"We conclude that in the particular circumstances of this case there was substantial compliance with [Penal Code] section 1531, and also that the underlying purposes and policies of the statute were served by the conduct of the officers. [Citations.]" (*Id.,* at pp. 953-954.)

## VII.

In federal decisions the notion of substantial compliance finds a counterpart in what has been termed the "useless gesture" exception to the requirements of knock and announcement. That exception stems from the United States Supreme Court decision in *Miller* v. *United States* (1958) 357 U.S. 301 [2 L.Ed.2d 1332, 78 S.Ct. 1190], where the court observed: "It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture." (*Id.,* at p. 310 [2 L.Ed.2d at p. 1338].) In *Ker* v. *California, supra,* 374 U.S. 23, Justice Brennan in his dissenting opinion wrote that ". . . the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose . . . ." (*Id.,* at p. 47 [10 L.Ed.2d at p. 746].) In *Sabbath* v. *United States, supra,* 391 U.S. 585 a majority of the court noted: "Exceptions to any possible constitutional rule relating to announcement and entry have been recognized, see *Ker* v. *California, supra,* at 47 (opinion of BRENNAN, J.), and there is little reason why those limited exceptions might not also apply to § 3109, since they existed at common law, of which the statute is a codification." (*Id.,* at p. 591, fn. 8 [20 L.Ed.2d at p. 834].)

*United States* v. *Artieri* (2d Cir. 1974) 491 F.2d 440, certiorari denied *sub nom. Gonzales* v. *United States* (1974) 417 U.S. 949 [41 L.Ed.2d 670, 94 S.Ct. 3076] involved a warrantless entry and arrest. There an informant told

police and federal agents that he had been invited by the defendants to cut and bag heroin the following day. After making appropriate arrangements, federal agents observed the informant and the defendants enter an apartment unit. Thereafter the informer gave the agents a prearranged signal indicating that heroin was then being cut and bagged. Three agents went to the front door. One agent knocked loudly and shouted they were federal agents; and as he did so the door, which was not latched, swung open. The agents paused for about three seconds and then entered. They found the defendants cutting a substantial quantity of heroin at the kitchen table, and placed them under arrest.

The circuit court upheld the entry, saying this: ". . . when an officer knocks on the door of an apartment occupied by an experienced narcotics violator, which is reasonably believed by him to be so, and clearly identifies himself as a Federal agent, *there is sufficient compliance with the spirit of the statute even if perhaps not with the strict letter.* A knock is at least a request for entry, and a trafficker in narcotics who has been told that this is being made by a Federal agent can have no real doubt that the purpose is arrest, search, or both, or that, if the request is not honored, something more will speedily follow. . . .' [Citation.] This aptly describes the officers' conduct in this case and brings the entry within the first exception. It therefore violated neither the Fourth Amendment nor the statute." (*Id.,* at p. 444, quoting from *United States* v. *Manning* (2d Cir. 1971) 448 F.2d 992, 1000-1001, cert. den. (1971) 404 U.S. 995 [30 L.Ed.2d 548, 92 S.Ct. 541]; italics added.)

In *United States* v. *Singleton* (3d Cir. 1971) 439 F.2d 381 narcotics agents equipped with a search warrant came to a house. They had probable cause to believe that the defendants used the premises to bag narcotics. One of agents knocked twice on the front door. There was no response to the first knock, but at the second knock one of the defendants parted the curtains, looked out, and recognized the agent as a narcotics officer. He told his codefendant that the police were outside. There was a commotion inside the house. The agents then forced open the front door. "The testimony unequivocally reveals that none of the detectives or federal agents announced, prior to entering the premises, that they had a warrant to search." (*Id.,* at p. 385.)

The circuit court nevertheless held the entry valid. The court noted two exceptions to the knock and announce requirements: (1) the "useless gesture" exception, and (2) a reasonable belief that evidence may be destroyed. "Both of these exceptions come into play in this appeal. Detective Costanza knocked on the door. He was seen by Mosby who knew him to be a state narcotics officer. There was a refusal to open, followed by a shuffling of feet

on the inside. Under these circumstances an announcement of purpose and authority would have been a useless gesture and may have enhanced the possibility of destruction of the contraband. The fact that Mosby knew Costanza's authority would give a reasonable person notice that the purpose of seeking entry was either to make an arrest or to search the premises. [Citation.]" (*Id.,* at p. 386.)

A somewhat analogous case is *United States* v. *Bustamente-Gamez, supra,* 488 F.2d 4, in which the circuit court examined the "refusal of admittance" requirement of 18 United States Code section 3109, the federal statute relating to search warrants. In that case officers had probable cause to believe that a certain Pontiac automobile, containing 40 kilos of marijuana, was located in the garage of a house. They approached the house without a warrant. One officer went to the front door, knocked, announced that he was a federal officer who was there to make an arrest. Simultaneously another agent opened the unlocked garage door, and found the Pontiac, one of the defendants, and several bricks of marijuana.

On appeal from their convictions the defendants argued (among other things) that the officers had not complied with the "refusal of admittance" requirement. The circuit court disagreed with this contention. While it did not hold that such compliance was a "useless gesture," the court held that compliance is not required in all cases. We quote from pertinent parts of the opinion: "By and large, both the cases and the literature have concentrated solely upon the 'announcement' portion of section 3019; little attention has been devoted to the issue of when 'refusal of admittance' is necessary. Such case law as there is, however, suggests that this requirement, like the rule of announcement in general, is a flexible one which is not to be applied mechanically." (*Id.,* at pp. 10-11.) "The teaching of these cases is that 'refusal of admittance' may not be necessary when even a mild showing of exigency is made and that, in situations not involving closed or locked doors, it is relatively unimportant. This view of the requirement is entirely consistent with an analysis based upon the interests purportedly served by the rule of announcement. To the extent that the rule prevents violence, its utility is exhausted when the actual announcement is made. The concern here is that an unannounced intrusion will provoke citizens to exercise their general right to repel intruders by force. [Citations.] However, few persons carry weapons about with them when they are at home. Thus, if announcement is made simultaneously with or shortly before entry it is unlikely that a law-abiding citizen would respond violently or provoke violence on the part of the officers. Indeed, if an occupant is predisposed to resist an entry by police, a substantial delay between announcement and entry could only give him time to prepare." (*Id.,* at p. 11.)

"The interest in preventing the unnecessary destruction of private property is clearly not present when officers enter through an unlocked door. Thus, officers may often be required to wait until permission to enter is either explicitly or constructively denied before actually forcing their way into a residence, when they would be justified in entering only upon announcement if the door were unlocked." (*Ibid.*)

"The extent to which the rule of announcement protects privacy has been widely debated. It is at least clear that the rule does *not,* as one commentator has claimed, 'secure to an individual the feeling of control over his own dwelling, upholding the dignity of the citizen against the state.' [Citation.] *The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrantless entry from entering his home.* At the most, the 'refusal of admittance' requirement gives him a few moments to decide whether or not he will open the door himself." (*Ibid.,* italics added.) "[L]ittle, if anything is gained by permitting the occupant to open the door to an entry that he cannot legally resist." (*Id.,* at p. 12; accord, *United States* v. *Whitney* (9th Cir. 1980) 633 F.2d 902, 909.)

### VIII.

■ In light of the foregoing authority, we hold that the entry effected in this case substantially complied with Penal Code section 1531, and was "reasonable" within the meaning of the Fourth Amendment.

First, whatever invasion of privacy occurred was minimal. The officers were visible to the occupant, and vice versa. Cannon was merely interrupted in his television viewing.

Second, the uncontradicted evidence demonstrated that Detective Kyle (1) attracted Cannon's attention by making eye contact with him, (2) announced his authority by identifying himself as a peace officer, and (3) announced his purpose by saying he had a warrant to search the premises. All of this occurred before the screen door was opened. The spirit of Penal Code section 1531 was thus complied with, and the officers could reasonably be certain that Cannon was aware of their authority and purpose.

Third, because the officers had a search warrant, Cannon had no right to refuse entry. Under the circumstances here, to allow him to open the screen door would have been a useless gesture.

Fourth, the possibility of a violent confrontation was negated because defendant Cannon could see the officers were armed.

Accordingly the order of the superior court denying the People's motion to reinstate the complaint is reversed.[8]

Agliano, P. J., and Capaccioli, J., concurred.

A petition for a rehearing was denied November 28, 1987, and respondents' petition for review by the Supreme Court was denied January 28, 1988. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

---

[8] In a case filed September 30, 1987, the First Appellate District, Division One, reached a conclusion identical to ours based upon similar facts. (*People* v. *White* (1987) 195 Cal.App.3d 144, 154 [240 Cal.Rptr. 527].)