KAUS, P. J.
 

 After a preliminary hearing the People filed a two-count information against defendant and respondent Ann Marie Monson. Count I charged her with possession of heroin (Health & Saf. Code, § 11500), count II with possession of marijuana (Health & Saf. Code, § 11530.) The superior court dismissed the information pursuant to section 995 of the Penal Code. The People appeal.
 

 All of the evidence came from Officer Chester B. Turner of the Los Angeles Police Department. On February 14, 1966, Officer Turner showed the photograph of one William Baron Woodman to the manager of a market for identification as a possible robbery suspect. The manager identified Woodman. There had been a series of robberies at this particular market. Turner had obtained Woodman’s address from his parole officer. He went to the location with the parole officer. He knocked at the door which was opened by Woodman. Woodman was informed that he was under arrest for robbery. Defendant was seen by Turner and she, too, was placed under arrest for robbery. Both Woodman and defendant were then advised that they were entitled to the services of an attorney, that any statements made by them could be used against them in subsequent proceedings and that they had the right to remain silent. Both said that they understood the warning. Defendant then went to one of the two bedrooms in the apartment to prepare to dress her son. Turner then started a search of the apartment, searching for contraband, monies and arti
 
 *687
 
 eles taken during “the robbery.” He stated that he found money and “a great deal of paper work from the market.” Further inquiry into the results of the search as far as it was pertinent to the robbery was blocked by a defense objection.
 
 [1]
 
 In a hallway closet Turner found a small pan containing a white powder which, on later examination, turned out to be heroin.
 

 Marijuana was found in a bedroom closet which contained male and female garments.
 

 Turner had a conversation with defendant. The substance of the conversation was as follows: Defendant had been living with Woodman three or four months. She was shooting two or three caps of heroin a day. She had been doing this for two or three weeks. She did not know whether she was “hooked.” Woodman supplied the heroin. She did not know where it came from and she more or less took it at his insistence. She did not know anything about the marijuana and had never seen it before.
 

 The first issue is, of course, the legality of the search. The People concede that defendant’s arrest was illegal. Defendant contends that the contraband found in the closets was improperly admitted by the magistrate, since it is “the fruit of the poisonous tree, ’ ’ namely her arrest.
 

 Defendant is looking at the wrong tree. The People need not justify the search by the legality of her arrest. There is no question that Woodman’s arrest was legal and that the search was properly incidental thereto. The fact that it turned up evidence implicating defendant in other crimes does not invalidate it. “Once evidence is lawfully obtained, the state may use it in the enforcement of any law which may have been violated.”
 
 (Mardis
 
 v.
 
 Superior Court,
 
 218 Cal.App.2d 70, 76 [32 Cal.Rptr. 263].)
 

 The next problem is the admissibility of defendant’s incriminating statement. The warning she was given complied with
 
 People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] but was defective as far as the standards laid down in
 
 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] are concerned. The preliminary hearing took place before June 13, 1966, the date of the
 
 Miranda
 
 decision.
 
 (Johnson
 
 v.
 
 New Jersey,
 
 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772] ;
 
 People
 
 v.
 
 Rollins,
 
 65 Cal.2d 681 [56 Cal.
 
 *688
 
 Rptr. 293, 423 P.2d 221].) The trial, if any, will of necessity take place under
 
 Miranda
 
 auspices.
 

 We do not believe that the inadmissibility of the statement at a future trial should play any part in our consideration today. The magistrate’s ruling was proper when made. In view of the ruling the People may well have refrained from putting in other evidence.
 
 [2]
 

 Nor do we believe that defendant’s statement was inadmissible because of the initial illegal arrest. At the time when it was obtained the narcotics had been found in the apartment. Whether or not this discovery would have justified a formal arrest at that moment, it certainly authorized a temporary detention short of arrest.
 
 (People
 
 v.
 
 Mickelson,
 
 59 Cal.2d 448, 450-452 [30 Cal.Rptr. 18, 380 P.2d 658] ;
 
 People
 
 v.
 
 Machel,
 
 234 Cal.App.2d 37, 43-45 [44 Cal.Rptr. 126] ; cf.
 
 Wong Sun
 
 v.
 
 United States,
 
 371 U.S. 471, 485-486 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407] ;
 
 People
 
 v.
 
 Bilderbach,
 
 62 Cal.2d 757, 766-768 [44 Cal.Rptr. 313, 401 P.2d 921].) True, the officer never informed defendant that an illegal arrest had been transmuted into a legal detention, but we do not see why such an explanation is essential. The finding of the narcotics made the previous illegal arrest 1 ‘ unrelated and collateral to the securing” of the statement. (Cf.
 
 People
 
 v.
 
 Boyles,
 
 45 Cal.2d 652, 654-655 [290 P.2d 535].)
 

 Further the magistrate was free to infer that the legal seizure of the narcotics rather than any illegality in defendant’s detention was the cause of her statement.
 

 With defendant’s statement thus admissible, it cannot be seriously contended that the evidence was insufficient concerning the count charging her with possession of heroin. Her disclaimer of knowledge where the narcotic came from did not have to be accepted.
 

 The marijuana presents a different problem. There is nothing in defendant’s statement which connects her with the marijuana in the bedroom closet. The question is whether it can be inferred that she was in constructive possession and knew of the narcotic nature of the substance from the fact that she evidently lived in the apartment and that the closet contained female garments. The People urge us to answer that question in the affirmative but cite no case involving such sparse facts.
 

 
 *689
 
 In the procedural posture of this case defendant should be required to stand trial on the marijuana count “if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.”
 
 (Bompensiero
 
 v.
 
 Superior Court,
 
 44 Cal.2d 178, 183-184 [281 P.2d 250].) The problem of determining what circumstantial evidence supports a rational inference that a defendant is in constructive possession of narcotics and is aware of the narcotic nature thereof has been before the courts many, many times. The fact that the People are unable to refer us to any decision which would support the information with respect to count II suggests that there is none. Our own research leads us to the same conclusion.
 

 The latest decision in this field is
 
 Rideout
 
 v.
 
 Superior Court,
 
 67 Cal.2d 471 [62 Cal.Rptr. 581, 432 P.2d 197], We have carefully compared the facts in
 
 Rideout
 
 with those disclosed by the record before us. We think that
 
 Rideout
 
 is an appreciably stronger case than the one at bar.
 

 The order is reversed with respect to count I and affirmed with respect to count II.
 

 Hufstedler, J., and Stephens, J., concurred.
 

 [1]
 

 At a later point the officer was permitted to testify that in a bedroom closet he found an orange bag containing receipts from the market and about $500 to $600 in cash.
 

 [2]
 

 It seems very probable that this is so. In defendant’s statement she confessed to two or three injections per day. If she was telling the truth, needle marks may have been apparent, but there is no such evidence in the record.