[Civ. No. 10095. Fourth Dist., Div. Two. May 22, 1970.]

CARSON CAMERON FRAZZINI, Petitioner, v.
THE SUPERIOR COURT OF INYO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Vargas, Bartlett & Dixon, John C. Bartlett and Steven T. Walther for Petitioner.

No appearance for Respondent.

Frank H. Fowles, District Attorney, and L. H. Gibbons, Jr., Deputy District Attorney, for Real Party in Interest.

## OPINION

KAUFMAN, J.—Petitioner (hereinafter defendant) is charged by information with violation of section 11910 of the Health and Safety Code (unlawful possession of restricted dangerous drugs). His motion to set aside the information (Pen. Code, § 995), was denied and he seeks a writ of prohibition to restrain respondent court from proceeding further against him on the information. (Pen. Code, § 999a.)

Defendant contends (1) that the search of a cabin in which contraband was found was made pursuant to a search warrant issued upon an affidavit lacking sufficient facts to establish probable cause to support its issuance; and (2) that, in any event, insufficient evidence was presented at the preliminary hearing to prove that defendant had actual or constructive possession of the contraband.

### The Facts

At approximately 9 p.m. on May 12, 1969, law enforcement personnel went to apartment #1 of McMurry's Apartments near Highway 395 in Bishop for the purpose of executing a search warrant issued that same day by the Northern Inyo Justice Court on the application of Raymond L. Riley, an investigator for the Inyo County district attorney's office. The search warrant commanded an immediate search of the premises, the person of defendant, the person of Lizabeth Faley, a white Dodge pickup truck customarily used by the defendant, and a red, 1964 Buick automobile customarily used by Lizabeth Faley, for marijuana and restricted dangerous drugs as defined in the Health and Safety Code.

After ascertaining that the two vehicles described in the warrant were parked near the cabin and that there were persons inside the cabin, Mr. Riley went to the door and called out defendant's name. The front door was open but a screen door was closed. Defendant answered and came to the door, and Riley identified himself as a police officer and told defendant that he had a search warrant for defendant's residence, person and car. The officers then entered the cabin. Inside were defendant, Lizabeth Faley and a Mr. Summers. All were in the living room.

The search of the premises pursuant to the warrant disclosed several items constituting dangerous restricted drugs.[1] In the kitchen, which, from

---

[1]Other items of contraband were also found. In a box in the kitchen on a shelf above the refrigerator, one of the officers found a "hype kit," paraphernalia used by drug users to inject drugs. Another officer found a large wooden pipe on top of the coffee table in the living room which contained a residue (not a usable quantity) of

the appearance of dishes and cooking vessels had recently been used, on a shelf above the refrigerator, one of the officers found a box containing a red capsule later identified as seconal or secobarbital. Investigator Riley also found four pills in a pocket of a blue and green striped wool shirt hanging in the closet of the only bedroom of the cabin. These pills were subsequently identified as amphetamine.

In the same closet was a suitcase containing clothes and miscellaneous items including a wallet and various papers bearing defendant's name.[2] Riley directed a question, apparently to all persons present, asking to whom the striped wool shirt belonged. He received no response. There were also some dirty clothes on the floor of the closet. As Riley was looking through the dirty clothes, defendant stated to him, "Don't get dirty; they are pretty cruddy." Some other dirty clothing was found in a box in the bedroom at the foot of the bed. When Riley asked to whom these clothes belonged, Mr. Summers responded that they belonged to him.

Mr. McMurry, the owner of the cabin, testified at the preliminary hearing that he had never seen defendant before and that the cabin in question was rented by one Bob MacDonald. Riley did not communicate with McMurry prior to the search and arrest for fear that word of his investigative activities would get out.

The affidavit in support of the application for the search warrant was made by Investigator Riley and may be summarized as follows. It contains a description of the cabin, of defendant and the Dodge pickup habitually driven by him, and Lizabeth Faley and the Buick automobile habitually driven by her. It is stated that there is probable and reasonable cause to believe that marijuana and various dangerous restricted drugs are to be found upon said persons and in said vehicles and in the cabin. This conclusion is supported by the following facts.

Riley has had special training and considerable experience in narcotics investigation, and from his training and experience in the Inyo County area he knows that marijuana and dangerous drugs are not manufactured or harvested in that area but that they come to the area from the vicinity of Reno and Los Angeles. Riley had been investigating narcotics abuse in Inyo County for approximately ten months, and during the immediately

---

marijuana in the bowl. The officers also found a usable quantity of marijuana in a purse which Lizabeth Faley identified as hers, as a result of which she was arrested for possession of marijuana.

[2]Included in the contents of this suitcase was a package of "zigzag" cigarette papers having gummed edges of a type commonly used in the preparation and smoking of marijuana cigarettes. A second package of these cigarette papers was found in a paper bag on the floor of the closet.

preceding six months, his attention had been directed to the activities of defendant and Lizabeth Faley.

He had been told by a reliable informant (details supporting reliability included) that during the month of October 1968 defendant went to Reno, Nevada in order to buy drugs and that he and a confederate were transporting marijuana and dangerous drugs into Inyo County and the City of Bishop. He was further informed by the informant that she saw marijuana and dangerous drugs in plain view in defendant's apartment in October 1968. Said informant also indicated that Lizabeth Faley was selling restricted dangerous drugs while working as a cocktail waitress at a tavern in Bishop and that the informant, herself, had received restricted dangerous drugs from Lizabeth Faley at said establishment and had there seen Lizabeth Faley supply other persons with restricted dangerous drugs.

Riley personally observed defendant, during the months of February through April 1969, make about three trips a month from the Reno-Tahoe area to the Bishop area, each stay in the Bishop area averaging about three days. His most recent visit to the Bishop area was, however, of longer duration. Riley had observed that, when in the Bishop area, defendant was in the almost constant company of Lizabeth Faley and that he frequently resided with her when in the Bishop area. Both defendant and Lizabeth Faley had frequently been seen associating with a number of known narcotics and dangerous-drug users in the Bishop area (names and supporting data included).

During his stays in the Bishop area, defendant frequently resided at the Mountain View Motel. During defendant's most recent stay in the Bishop area, he checked into said motel on April 26, 1969. Defendant was visited at said motel by numerous persons, including several of the known drug users aforementioned, to such an extent that the manager of the motel, Kenneth Slee, discussed the matter with defendant, as a result of which defendant checked out of said motel on May 6, 1969. Slee had given Riley an ash tray which he found in defendant's room while cleaning on April 28, 1969, which contained numerous marijuana seeds and the remains of a marijuana cigarette.

Following receipt of the information that defendant had moved out of the Mountain View Motel, Riley attempted to determine where defendant was then staying should he still be in the Bishop area. Five days later, on May 11, 1969, Riley observed defendant and Lizabeth Faley leave a local bar at 2:15 a.m. and observed them proceed to and enter cabin #1 of McMurry's Apartments. Neither had left when Riley discontinued his surveillance of the cabin at 4 a.m.

Riley was informed by one Gale Murphy, owner of a liquor store in

the vicinity of the cabin, that he had observed numerous "hippy" type visitors going in and out of the cabin at all hours of the day and night. Two of these visitors were identified as known or suspected narcotics violators.

Based on the foregoing information, Riley stated his belief that defendant and Lizabeth Faley ". . . are using the present residence above described . . . for the illegal consumption and transfer of marijuana . . . and restricted dangerous drugs . . ." and ". . . that the use of said marijuana and dangerous drugs and the transfer of the same has been transferred from the 'Mountain View Motel' " to the cabin.

Substantially all of the facts set forth in the affidavit were introduced into evidence in one form or another at the preliminary hearing.

### Validity of the Search Warrant

We turn first to defendant's contention that the facts in the affidavit were insufficient to justify the issuance of a warrant for the search of the cabin. It is urged that the facts are insufficient to establish probable cause to believe that the cabin was defendant's residence or that marijuana or dangerous restricted drugs would be found in the cabin.

Section 1524 of the Penal Code sets out the grounds upon which a search warrant may be issued.[3] Section 1527 of the Penal Code provides that the affidavit "must set forth the facts tending to establish the grounds of the application, or probable cause for believing that they exist," and it is fundamental that the issuance of a search warrant must be based upon the facts showing probable cause. (U.S. Const., Amend. IV; Cal. Const., art. I, § 19; Pen. Code, § 1525.) ▆ In determining the sufficiency of an affidavit for the issuance of a search warrant, the test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury, that is, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe and conscientiously to entertain a strong suspicion of the guilt of the accused (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; *People* v. *Stout,* 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704]), which, in a case such as this, means to believe and con-

---

[3]Subdivisions 3 and 4 of section 1524 read in pertinent part: "3. When the property or things are in the possession of any person with the intent to use it as a means of committing a public offense, . . . .

"4. When the property or things to be seized consist of any item or constitutes any evidence which tends to show a felony has been committed, or tends to show that a particular person has committed a felony."

▆

scientiously to entertain a strong suspicion that the contraband was present in the place to be searched (*Skelton* v. *Superior Court, supra,* at p. 150; *People* v. *Wilson,* 256 Cal.App.2d 411, 417 [64 Cal.Rptr. 172]).

■ "As the court stated in *Aguilar* [*Aguilar* v. *Texas,* 378 U.S. 108, 110-111 (12 L.Ed.2d 723, 726, 84 S.Ct. 1509, 1512)], 'An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried actions of officers . . . . who may happen to make arrests." ' ■ Thus when a search is based on a warrant (and therefore on a magistrate's rather than a police officer's determination of probable cause) the reviewing courts 'will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." . . . [*Jones* v. *United States,* 362 U.S. 257, 270 (4 L.Ed.2d 697, 708, 80 S.Ct. 725, 736, 78 A.L.R.2d 233)] and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude . . ." ' that the contraband was probably present." (*Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 149-150.)

■ "[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (*United States* v. *Ventresca,* 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741, 746].)

■ It was not necessary that the facts in the affidavit show that the cabin was defendant's residence, nor that he had rented it, nor that he had exclusive possession of it. (*People* v. *Fitzwater,* 260 Cal.App.2d 478, 483 [67 Cal.Rptr. 190] [hearing den.]; cf. *People* v. *Coulon,* 273 Cal.App.2d 148, 155-156 [78 Cal.Rptr. 95]; *People* v. *Cole,* 255 Cal.App.2d 237, 240-241 [62 Cal.Rptr. 874]; *People* v. *Gorg,* 157 Cal.App.2d 515, 523 [321 P.2d 143].) Proof of such facts is not essential even to a conviction. (*People* v. *Redrick,* 55 Cal.2d 282, 287-289 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Jackson,* 198 Cal.App.2d 698, 704-705 [18 Cal.Rptr. 214]; *People* v. *Flores,* 155 Cal.App.2d 347, 348-349 [318 P.2d 65].) ■ To support a reasonable belief and strong, conscientious suspicion that marijuana or dangerous drugs would be found in the cabin would require only facts from which it could be inferred that the defendant probably possessed such contraband and that defendant's connection with the cabin was such

as to make it probable that the contraband could be found there. (Cf. *People* v. *Fitzwater, supra.*)

■ From the facts stated in the affidavit and reasonable inferences therefrom it would appear that defendant had been for many months trafficking in marijuana and dangerous restricted drugs, transporting the same from the Reno area to the Bishop area for distribution. He had recently come again to the Bishop area where he was in constant association with known drug offenders. Remnants of marijuana, evidencing its use, had been found in his motel room only a few days previously. Although there were no specific facts showing any recent purchase or acquisition by defendant of any large quantity of marijuana or dangerous restricted drugs, it was not unreasonable to conclude that he was engaged in a persistent and continuous course of illegal drug activities and that he still possessed such contraband. (Cf. *People* v. *Jackson, supra,* 198 Cal.App.2d 698, 707.)

It was likewise not unreasonable to infer that defendant had transferred his activities from the Mountain View Motel to the cabin. The affidavit sets forth that, when in the Bishop area, defendant was in the almost constant company of Lizabeth Faley and that he frequently resided with her and that on May 6, 1969, defendant had moved out of the Mountain View Motel, where he frequently stayed and was staying on this most recent visit to the Bishop area. Investigator Riley observed defendant and Lizabeth Faley leave a local bar at 2:15 a.m. and enter the cabin from which they had not departed when Riley discontinued his surveillance at about 4 a.m. Knowing that they frequently resided together and knowing that defendant had moved out of the Mountain View Motel, it was a fair inference that defendant and Lizabeth Faley were now staying at the cabin. From the frequent visits of known drug violators to defendant's quarters at the Mountain View Motel and the other facts concerning defendant's drug activities, it was a reasonable inference that defendant had been using his room at the Mountain View Motel as his headquarters, and it was not an unreasonable inference that those activities had been transferred to the cabin, particularly in view of the fact that known and suspected drug violators were visiting the cabin, similar to the pattern at the Mountain View Motel.

■ "The rules of appellate review recognize the impracticality of establishing a precise calculus by which the existence of probable cause is to be determined: the warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when

presented by affidavit as well as when presented by oral testimony. [Citations.]" (*Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 150; *People* v. *Stout, supra,* 66 Cal.2d 184, 193.) ██ In view of the facts and reasonable inferences therefrom set forth above, the affidavit in the case at bench cannot be said as a matter of law to be insufficient to support the magistrate's finding of probable cause.

### Sufficiency of the Evidence

We next turn to a consideration of defendant's contention that the evidence presented at the preliminary hearing was insufficient as a matter of law to show his possession of the contraband. ██ It is well settled, of course, that to establish unlawful possession of contraband, it must be shown that the accused exercised dominion and control over it with knowledge of its presence and character. (*People* v. *Redrick, supra,* 55 Cal.2d 282, 285; *People* v. *Jackson, supra,* 198 Cal.App.2d 698, 704.) Defendant contends that there is no evidence to establish these elements.

Were we reviewing the sufficiency of the evidence following a conviction, we should greatly doubt its sufficiency. (See *People* v. *Redrick, supra,* 55 Cal.2d 282, 285-287 and cases there collected.) The matter before us, however, is a writ of prohibition to review the denial of a motion to set aside the information, and an appellate court, in reviewing such a determination is bound by well-established rules. ██ Evidence that will justify a prosecution need not be sufficient to support a conviction. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 56 [216 P.2d 859]; *People* v. *Pompei,* 267 Cal.App.2d 581, 587 [73 Cal.Rptr. 163] [hearing den.]; *People* v. *Garcia,* 265 Cal.App.2d 94, 97 [71 Cal.Rptr. 102] [hearing den.]; *People* v. *Willmirth,* 247 Cal.App.2d 513, 514 [55 Cal.Rptr. 678].) Every legitimate inference that may be drawn from the evidence must be drawn in favor of the determination of probable cause. (*Williams* v. *Superior Court,* 71 Cal.2d 1144, 1148 [80 Cal.Rptr. 747, 458 P.2d 987]; *People* v. *Cron,* 207 Cal.App.2d 452, 457 [24 Cal.Rptr. 587].) ██ A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and, if there is some evidence to support the information, the court will not inquire into its sufficiency. (*Williams* v. *Superior Court, supra; Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Jablon,* 153 Cal.App.2d 456, 459 [314 P.2d 824].) ██ An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is

guilty of it. (*Williams* v. *Superior Court, supra,* 71 Cal.2d 1144; *DeMond* v. *Superior Court,* 57 Cal.2d 340, 344 [19 Cal.Rptr. 313, 368 P.2d 865].)

 Observing these rules of appellate review, we have concluded that there is some evidence from which a reasonable inference of defendant's unlawful possession may be drawn and that there is, therefore, a rational basis for the magistrate's finding of probable cause.

Four pills identified as amphetamine were found in the pocket of a shirt hanging in the closet of the only bedroom in the cabin. Unlawful possession may be inferred when the contraband is found in a pocket of a shirt belonging to the accused or among his personal effects, notwithstanding that someone else may have had the opportunity to deposit the contraband there. (*People* v. *Redrick, supra,* 55 Cal.2d 282, 287; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 340 [244 P.2d 750]; *People* v. *Prieto,* 191 Cal.App.2d 62, 71 [12 Cal.Rptr. 577]; *People* v. *Mateo,* 171 Cal.App.2d 850, 854-855 [341 P.2d 768]; *People* v. *Flores, supra,* 155 Cal.App.2d 347, 349.) Defendant argues, however, that there is no evidence of his ownership of the shirt. It is true that there is no direct evidence that the shirt is his, but there is evidence from which a reasonable inference of his ownership may be made, and the elements of unlawful possession of drugs may be established by circumstantial evidence and any reasonable inferences drawn therefrom. (*People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Jackson, supra,* 198 Cal.App.2d 698, 704.)

From the facts of defendant's moving out of the Mountain View Motel and his going to the cabin with his companion Lizabeth Faley and staying the night there and the presence of defendant's suitcase in the closet of the only bedroom in the cabin, it could reasonably be inferred that defendant was staying or at least sleeping at the cabin and using the bedroom and the closet. In the closet were defendant's suitcase and some dirty clothes on the floor. It could be inferred from defendant's statement with respect to the clothes on the floor, "Don't get dirty; they are pretty cruddy" that these clothes were also his. This inference is reinforced by the fact that the other dirty clothes found in the box at the foot of the bed were identified by Mr. Summers as his in response to Investigator Riley's inquiry. It is also noteworthy that when Riley asked to whom the shirt hanging in the closet belonged, he received no response at all. Admittedly, the suitcase in the closet was defendant's. By reasonable inference the dirty clothes in the closet were also his. There is no evidence that the shirt in which the pills were found belonged to any other person, and defendant did not deny its ownership when Investigator Riley inquired.

It is true that proof of opportunity of access to a place where contraband is found, without more, will not support a conviction of unlawful possession. (*People* v. *Redrick, supra,* 55 Cal.2d 282, 285; *People* v. *Jackson, supra,* 198 Cal.App.2d 698, 705.) We are not, however, reviewing the sufficiency of the evidence to support a conviction, rather, we are testing the sufficiency of the evidence to support a determination of probable cause. (See *Rideout* v. *Superior Court,* 67 Cal.2d 471, 475 [62 Cal.Rptr. 581, 432 P.2d 197].) ▮ Proof of the accused's access to the place where contraband is found is some inferential evidence of possession, and when accompanied by other evidence, even if it be slight, will support a finding of probable cause (*Rideout* v. *Superior Court, supra,* at p. 475; *People* v. *Cole, supra,* 255 Cal.App.2d 237, 240-241), and may even support a conviction (*People* v. *Jackson, supra,* 198 Cal.App.2d 698, 705-707; see *People* v. *Redrick, supra,* 55 Cal.2d 282, 287-288 and cases there collected). In *People* v. *Jackson, supra,* the necessary additional evidence consisted of the defendant's previous narcotics activities and association with drug offenders "persuasive to the effect that defendant and his associates were engaged in a persistent and continuous course of illegal . . . [drug] activities. . . ." (At p. 707.) ▮ There is similar evidence in the case at bench, and we hold that the evidence was sufficient to support the magistrate's holding defendant to answer.

Defendant places great reliance upon *People* v. *Monson,* 255 Cal.App.2d 689 [63 Cal.Rptr. 409] and urges that the decision in that case should govern the decision in the case at bench. The facts in the *Monson* case are in some respects similar to the facts in this case, but, upon proper analysis, the facts in *Monson* concerning the marijuana charge are fundamentally distinguishable from those in this case, and the facts and holding with respect to the heroin charge in *Monson* actually support the finding of probable cause in this case.

In the *Monson* case, the defendant, a woman, had been living with a man in an apartment for about four months. So far as appears, they and the defendant's child were the only occupants of the apartment. In a pan in a closet a quantity of heroin was found. Although the defendant did not admit that this heroin was hers, she admitted using heroin supplied by her male companion. In a closet of one of the two bedrooms in the apartment, which contained both male and female garments, a quantity of marijuana was found. The marijuana was apparently not found in a garment. It does not appear where in the closet it was found. Notwithstanding her admission that she was a user of heroin, defendant denied any knowledge of the presence of the marijuana. The court held that, on these facts, there was sufficient evidence to support the magistrate's finding of probable cause with

respect to the charge of possession of heroin but that the evidence was insufficient to support the determination of probable cause with respect to the charge of possession of marijuana.

Comparing the evidence supporting the two charges, it is apparent that the defendant had nonexclusive access to both closets. With respect to the heroin there was some additional evidence from which the defendant's unlawful possession could be inferred, namely, her admission that she was a heroin user, and the court found this circumstantial evidence, when added to the defendant's nonexclusive access, to be sufficient. (*People* v. *Monson, supra,* 255 Cal.App.2d 689, 692.) With respect to the marijuana, however, the only additional evidence was that there were female garments in the closet. The court held that no inference could be drawn from this fact inasmuch as there were also male garments in the closet. Undoubtedly, the decision would have been otherwise had the marijuana been found in one of the female garments.

As pointed out previously, in the case at bench, the amphetamine pills were found in a man's shirt hanging in the bedroom closet, and it is inferable that this shirt belonged to defendant. As pointed out hereinabove, said inference may be made from the evidence that defendant was using the cabin and bedroom; that the only other items in the closet belonged to defendant by admission or reasonable inference; that the other clothing found in the bedroom were claimed by Mr. Summers and that when asked to whom the shirt belonged, defendant neither disclaimed ownership nor indicated that they belonged to any other person. Furthermore, as previously pointed out, in this case there is evidence tending to show a constant association by defendant with known drug violators and a continuous course of illicit activity in drugs. This evidence, on principle, is similar to the evidence in *Monson* of defendant's admission that she was a heroin user, which the court found sufficient to support probable cause when added to the defendant's nonexclusive access.

As observed in *People* v. *Redrick, supra,* 55 Cal.2d 282, 287; "As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control."

The petition for writ of prohibition is denied. The alternative writ here-

tofore issued by this court is discharged and the restraining order of this court heretofore made is dissolved.

Kerrigan, Acting P. J., and Gardner, J., concurred.