**E-FILED**
**CNMI SUPREME COURT**
E-filed: Jun 01 2023 03:09PM
Clerk Review: Jun 01 2023 03:09PM
Filing ID: 70119493
Case No.: 2022-SCC-0021-PET
Judy Aldan





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**IN RE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Petitioner,*

*v.*

**SUPERIOR COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA
ISLANDS,**
*Respondent,*

**AND**

**WILLIE CARNELL FRINK,**
*Respondent–Real Party in Interest*

**Supreme Court No. 2022-SCC-0021-PET**

---

## ORDER GRANTING WRIT OF MANDAMUS

**Cite as: 2023 MP 5**

Decided June 1, 2023

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court Criminal Action No. 22-0183
Associate Judge Joseph N. Camacho

———————

MANGLOÑA, J.:

¶ 1     The Commonwealth of the Northern Mariana Islands ("Commonwealth") petitions for a writ of mandamus to vacate the trial court's finding of no probable cause in the case of *Commonwealth v. Frink*, which was dismissed after the trial court determined that the prosecution failed to demonstrate probable cause at the preliminary hearing. The petition also requests this Court to reinstate the charges and order the trial court to find that the Commonwealth demonstrated probable cause at the hearing. For the following reasons, we GRANT the Commonwealth's petition to vacate the trial court's dismissal and to reinstate the charges against Frink. The trial court shall make a determination of probable cause upon review of the transcript of the preliminary hearing, according to the standards set forth in this Order.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2     On November 11, 2022, two crew members of a military pre-positioning ship, Willie Carnell Frink ("Frink"), 40, and Dahlia Milsap ("Milsap"), 21, were on shore together on Saipan to get provisions for the ship. Frink informed her that he had rented a room at Hotel Americano and drove there to check in. After checking in, the two drove to Saipan World Resort in Susupe. While at the World Resort beach, Frink rubbed Milsap's shoulders and offered to massage her, but she shrugged him off and declined.

¶ 3     They then left World Resort and drove to Aqua Resort in San Roque. At the pool area, Frink bought Milsap a beverage, and she began experiencing dizziness, blurred vision, and nausea after drinking it. The symptoms continued as they proceeded to dinner, where, after trying to eat, she requested to leave. They then drove back to Hotel Americano and went into the room. Her symptoms worsened, and she vomited in the bathroom. She showered, exited the bathroom, and sat on the bed. Frink began massaging her shoulders, but she attempted to shrug him off. Nonetheless, he pushed her down on the bed, straddled her with his legs, and put lotion on her back. She attempted to free herself but was unsuccessful, as she weighed approximately 110 pounds, and Frink weighed approximately 270 pounds.

¶ 4     Frink continued massaging toward the inner thighs and then removed her shorts and underwear. He removed his clothing, and she told him to stop; in response, he stated they were not "going all the way." She attempted to put on her underwear, but as she did so, Frink took it off her, forced her legs apart, and began having sexual intercourse. Milsap reported she then blacked out. Upon regaining consciousness, she remembers laying on her stomach, with Frink saying that he was going to "clean up" and turning on the bathroom light. After only a few minutes, she asked to leave the hotel room.

¶ 5     At approximately 10:00 p.m., they drove from the hotel to a bar in Garapan, where they met with other crew members from the ship. At approximately 11:00 p.m., they returned to the launch boat, which brought them to the ship. Upon returning, they went to their separate rooms. The next morning,

Milsap reported the incident to the ship's chief mate. The chief mate reported this to the ship's captain, who ordered Frink to be confined to his room. The chief mate took Milsap to the hospital for a Sexual Assault Nurse Examiner examination. The examination identified a bruise on the left thigh. The next day, the ship's captain reported the incident to DPS Detective Shannon A. Dela Cruz who was assigned to the case and interviewed Milsap twice.

¶ 6      On November 23, the Commonwealth filed an Information charging Frink with Sexual Assault in the First Degree, Sexual Assault in the Second Degree, Assault and Battery, and Disturbing the Peace. At the Preliminary Hearing, the court heard testimony from Detective Dela Cruz. After the hearing, the court found that the two "appeared friendly, not intoxicated, and appeared to be a couple." The court found no probable cause to detain Frink and dismissed the charges without prejudice. The Commonwealth then filed a Petition for a Writ of Mandamus requesting this Court to order the trial court to vacate its finding of no probable cause and to reinstate the charges with a finding of probable cause.

## II. JURISDICTION

¶ 7      The Supreme Court has jurisdiction to issue writs of mandamus under Article IV, Section 3 of the NMI Constitution. *Commonwealth v. Superior Court*, 2020 MP 22 ¶ 5.

## III. DISCUSSION

¶ 8      Writs of mandamus are extraordinary relief granted only in the most dire of circumstances. *In re Ogumoro*, 2015 MP 9 ¶ 9. This Court may grant a petition for a writ of mandamus when: (1) the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctible on appeal; (3) the lower court's order is clearly erroneous as a matter of law; (4) the lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and (5) the lower court's order raises new and important problems, or issues of law of first impression. *In re Commonwealth*, 2018 MP 8 ¶ 13 (citing *Tenorio v. Superior Court*, 1 NMI 1 (1989)). Petitioner must meet the third factor—whether the trial court's order is clearly erroneous—for a writ to issue, but the other factors are weighed together. *Id.*

### A. The Superior Court's Ruling is Clearly Erroneous

¶ 9      As the third factor is the most important, our analysis begins here. *See id.* (beginning discussion of a writ of mandamus with the third *Tenorio* factor). In applying this factor, we give high deference to the lower court's decision, and a clearly erroneous finding requires a "firm conviction" that the trial court erred. *In re Buckingham*, 2012 MP 15 ¶ 10. A writ would not be appropriate if a "rational and substantial" legal argument favors the questioned ruling. *Liu v. Commonwealth*, 2006 MP 5 ¶ 17. The proper question is whether the trial court could rationally have ruled as it did. *Id.*

¶ 10      Our analysis of the trial court's ruling starts with the law governing preliminary hearings. A preliminary hearing aims to determine whether there is

probable cause to believe that a crime has been committed and that the accused committed it. *Commonwealth v. Superior Court*, 2020 MP 22 ¶ 7. Preliminary hearings are often viewed as a screening device to determine whether the alleged facts justify detaining a defendant awaiting trial. *Id.* Under the NMI Rules of Criminal Procedure, a defendant is entitled to a preliminary hearing if the defendant has been "substantially deprived of liberty." NMI R. CRIM. P. 5.1. A preliminary hearing occurs after a defendant has been arrested. *Id.* R. 5. If the trial court finds probable cause at the preliminary hearing, the case can proceed to arraignment and trial. *See id.* R. 10.

¶ 11    Neither the NMI Rules of Criminal Procedure nor the statute governing preliminary hearings, 6 CMC § 6303, defines the legal standard that the trial court should use to find probable cause. In *In re Commonwealth*, 2018 MP 8, we looked to the United States Supreme Court, the 2nd, 3rd, and 7th Circuit Court of Appeals, the supreme courts of Utah, and Colorado, and the appellate courts of California and Wisconsin to flesh out the probable cause standard.

¶ 12    Under *In re Commonwealth*, the prosecution has the burden to produce believable evidence of all the elements of the crime charged. *Id.* ¶ 17 (citing *State v. Virgin*, 137 P.3d 787, 792 (Utah 2006)). Probable cause is a reasonable belief that a crime has been committed and that the defendant committed it. *State v. Regelman*, 430 P.3d 946, 953 (Kan. 2018). At a preliminary hearing, the discretion of the court to weigh evidence and evaluate witness credibility is minimal: if the facts as presented by the prosecution are disputed, as in the present case, the court can disregard witness testimony for lack of credibility only if it is "implausible or incredible." *In re Commonwealth*, 2018 MP 8 ¶ 17 (citing *Johns v. Dist. Ct.*, 561 P.2d 1, 3 (Colo. 1977). If the facts as presented by the prosecutor are not disputed by the defendant, courts are permitted to dismiss for lack of probable cause only if the facts presented are insufficient, as a matter of law, to satisfy the elements of the offense. *Id.* (citing *State v. Cotton*, 668 N.W.2d 346, 352 (Wis. Ct. App. 2003); *Frazzini v. Superior Court*, 87 Cal. Rptr. 32, 39 (Cal. Ct. App. 1970)).

¶ 13    We further elaborated on this standard in *Commonwealth*, 2020 MP 22. In this case, which concerned prosecution for sexual abuse of a minor, the Commonwealth petitioned for a writ of mandamus to vacate a trial court order requiring the production of documents at a preliminary hearing. *Id.* ¶ 1. In granting the petition, we reaffirmed that—to justify a probable cause finding—the prosecution must produce only "believable evidence" of all the elements of the crime charged. *Id.* ¶ 24. The trial court is not to "make findings of fact regarding disputed evidence"; instead, the court looks only to whether the evidence presented, if believed, would suffice "as a matter of law to satisfy each element" of the offense. *Id.* In *Commonwealth*, we found this low threshold satisfied merely by the testimony, on direct examination, of the lead detective about conversations she had with DYS forensic examiners and with the victim's family members. *Id.* ¶ 25 ("[T]he detective's testimony based on interviews at which she was herself present would suffice to establish probable cause.").

¶ 14    The jurisdictions we relied on in *Commonwealth*, 2020 MP 22, and *In re Commonwealth*, 2018 MP 8, particularly Utah and Colorado, provide further details regarding the probable cause determination. A case from the Utah Supreme Court, *State v. Clark*, 20 P.3d 300, 305 (2001), provides that, where the court is faced with "conflicting evidence," it is not to "sift or weigh the evidence." Instead, the trial court only asks whether the prosecution has presented "sufficient evidence to support a *reasonable belief* that an offense has been committed and that the defendant committed it." *Id.* at 306. The Utah case cited by this Court in *Commonwealth*, 2020 MP 22, is *State v. Virgin*, 137 P.3d 787 (2006). This case provides helpful discussion of the extent to which a court is free to make credibility determinations. The Utah Supreme Court clarified that the purpose of a preliminary hearing is to "ferret out groundless and improvident prosecutions." *Id.* at 792. A preliminary hearing is not a quasi-trial, and the prosecution is not obligated to produce evidence capable of supporting a finding of guilt beyond a reasonable doubt. *Id.* In general, the court has "limited" authority to make credibility determinations. *Id.* at 793. They are to view the evidence "in a light most favorable to the prosecution, resolving all inferences in favor of the prosecution." *Id.*; *accord People v. Hall*, 999 P.2d 207, 221 (Colo. 2000) ("During a preliminary hearing . . . [t]he court must view all evidence and draw all inferences in favor of the prosecution, and the court must not accept the defendant's version of the facts over the legitimate inferences that can be drawn from the prosecution's evidence."). A trial court may disregard evidence for lack of credibility *only if* it is "so contradictory, inconsistent, or unbelievable that it is unreasonable to base belief of an element of the prosecutor's claim on that evidence." *Virgin*, 137 P.3d at 793.

¶ 15    *In re Commonwealth*, which held that the court may disregard witness testimony at a preliminary hearing only if it is "implausible or incredible," relied on *Johns v. Dist. Ct.*, a 1977 case from the Colorado Supreme Court. *See In re Commonwealth*, 2018 MP 8 ¶ 17. In *Johns*, a state patrolman was charged after threatening and menacing a private individual without cause. *Johns*, 561 P.2d 1, 2 (Colo. 1977). After hearing testimony from the complainant at the preliminary examination, the court dismissed the charges, stating that the officer was justified in drawing his gun on the complainant. *Id.* 2–3. The Colorado Supreme Court held that the court improperly ruled on a question that should have been for the jury, namely, whether the officer was justified. *Id.* at 3. The supreme court reiterated an earlier holding that, at a preliminary hearing, "when there is a mere conflict in the testimony, a question of fact exists for the jury, and the judge must draw the inference favorable to the prosecution." *Id.* (citing *Hunter v. Dist. Ct.*, 543 P.2d 1265, 1268 (Colo. 1975)*. Like the Utah Supreme Court in *State v. Virgin*, the Colorado Supreme Court held that "a judge in a preliminary hearing has jurisdiction to consider the credibility of witnesses only when, as a matter of law, the testimony is implausible or incredible." *Id.*; *accord* 137 P.3d 787, 793.

¶ 16    A Nebraska case, *State v. Rossbach*, 650 N.W.2d 242, 244-45 (2002), is also on point for the matter at hand. In that case, a high school teacher was charged with the first-degree sexual assault of two minor students. At the

preliminary hearing, the prosecution presented testimony demonstrating that the students drove to the defendant's home after consuming alcohol at a party and that sexual intercourse then occurred. *Id.* at 245–46. The trial court dismissed the charges at the preliminary hearing, finding that the prosecution failed to establish probable cause. *Id.* at 247. Specifically, the court reasoned that, because the students consumed alcohol voluntarily and appeared to have had the capacity to travel to the defendant's home, the prosecution failed to demonstrate probable cause that the defendant had subjected them to sexual intercourse without consent or in a state where they were incapable of appraising the nature of the conduct, as required by Nebraska's sexual assault statute. *Id.* at 247; *see also* R.R.S. Neb. § 28-319.

¶ 17    On appeal, the Nebraska Supreme Court concluded that the trial court had failed to apply the correct probable cause standard. The issue at a preliminary hearing is not whether the defendant has been proven guilty beyond a reasonable doubt; instead, it is "whether the State had adduced enough evidence, *if believed by a trier of fact*, that would show that a first degree sexual assault had been perpetrated and that there is probable cause to believe the accused committed the act." *Rossbach,* 650 N.W.2d at 248 (emphasis added). The court concluded that the prosecution met this standard by presenting evidence that the students were intoxicated and that the defendant either knew or should have known of their intoxicated state when intercourse occurred. *Id.* at 250.

¶ 18    We are left with a firm conviction that the trial court erred in its analysis of the evidence presented at the preliminary hearing. The information charges sexual assault in the first degree, sexual assault in the second degree, assault and battery, and disturbing the peace. The lynchpin of all four charges is that Frink engaged in sexual intercourse with Milsap without her consent. "Without consent" is defined by 6 CMC § 1317(10) as "a person (A) with or without resisting, is coerced by the use of force against a person." At the preliminary hearing, the prosecution presented evidence from Detective Shannon Dela Cruz, who was the lead detective on the case and who conducted interviews with the victim. She testified that Milsap and Frink were alone together in his hotel room and that the former was experiencing dizziness and nausea after drinking a beverage purchased for her by Frink. Frink then began to touch her shoulders despite her attempts to shrug him off, and he continued by pushing her down onto the bed and holding her in place by straddling her hips with his legs. Frink, who weighed approximately 270 pounds at the time of the incident, began to apply lotion to her back. According to Officer Dela Cruz's testimony, Milsap was continually attempting to free herself from this position, but she was unable to do so by virtue of being approximately 110 pounds. Frink then proceeded to remove her shorts and underwear, and she told Frink that she wanted to stop. She attempted to put her underwear back on, but Frink forcibly removed it. Frink then forced her legs apart and began having sexual intercourse with her. In addition, the prosecution also presented evidence of bruising on the left thigh.

¶ 19   Frink's actions constitute "use of force" that coerced Milsap and resulted in sexual intercourse. At the preliminary hearing, counsel for defendant appeared to misinterpret the requirements of Section 1317(10): "without consent means . . . threat of death or kidnapping . . . coercion or force." Appendix to Petition ("Appendix") at 164. He continued, "[sexual assault in the first degree] is so inappropriate in a he said/she said case, two people in a hotel room together, and can this Court know?" *Id.* at 165. In the absence of "injury to her vagina," counsel argued, there is no way for the prosecution to show probable cause of sexual assault.

¶ 20   Contrary to defendant's assertions, cases from other jurisdictions make clear that the use of force requirement of "without consent" statutes can be met where a defendant uses force to pin a victim down and prevent her from escaping, even if more extreme actions such as slapping or choking do not occur. In the Texas case of *Gonzales v. State*, 2 S.W.3d 411, 414–15 (Tx. App. 1999) the defendant challenged his conviction for sexual assault, arguing that the prosecution had failed to show use of force.[1] The victim testified that the defendant "threw" or "laid" her on the couch and laid on top of her, preventing her from moving. *Id.* at 415. Like in the *Frink* case, the victim was unable to escape due to a significant weight difference between her and the defendant. *Id.* at 413, 415. The Texas Court of Appeals found this to satisfy the force requirement: "[t]here is no requirement that a certain amount of force be used, only that it is used." Accordingly, the conviction was upheld. *Id.* at 412.

¶ 21   Moreover, by dismissing the charges, the trial court made an improper credibility determination regarding Officer Dela Cruz's testimony and the victim's statements upon which that testimony was based. Under *Virgin*, 137 P.3d at 793, the court at a preliminary hearing is to view the evidence in a light most favorable to the prosecution. It may discount evidence and testimony for lack of credibility only where it is "so contradictory, inconsistent, or unbelievable that is unreasonable to base belief" on that evidence. *Id.* The California Supreme Court holds that "to reject the prosecution evidence at the probable cause stage, either the evidence presented must be inherently implausible, the witness must be conclusively impeached, or the demeanor of the witness must be so poor that no reasonable person would find them credible." *Cooley v. Superior Court*, 127 Cal. Rptr. 2d 177, 200 (Cal. 2002).

¶ 22   Here, Officer Dela Cruz's testimony about the details of the alleged sexual assault were not contradicted by any other evidence presented at the hearing. While a jury sitting at trial may or may not believe the victim's account, the trial court was not entitled, at this early stage in the proceedings, to discount testimony alleging a *prima facie* case for sexual assault. *See In re Commonwealth*, 2018 MP 8 ¶ 17 (holding that the court at a preliminary hearing may disregard witness

---

[1]   Texas law, like NMI law, defines sexual assault as penetration without consent. Tex. Penal Code Ann. § 22.011(a). "Without consent" is where the defendant "compels the other person to submit or participate by the use of physical force, violence, or coercion." *Id.* § 22.011(b).

testimony only where it is "implausible or incredible"). At the preliminary hearing, the court improperly accepted the defendant's version of the events over the prosecution's without showing that the prosecution's version was so contradictory, inconsistent, or unbelievable so as to render belief in it unreasonable. *See People v. Hall*, 999 P.2d 207, 221 (Colo. 2000) ("The court [at a preliminary hearing] must view all evidence and draw all inferences in favor of the prosecution, and the court must not accept the defendant's version of the facts over the legitimate inferences that can be drawn from the prosecution's evidence."). If believed by a jury, the Commonwealth's evidence would properly result in a finding that the defendant committed the charged offenses. *See State v. Rossbach*, 650 N.W.2d 248–49 (Neb. 2002).

¶ 23    We find that the third *Tenorio* factor is met in this case because the trial court's ruling is clearly erroneous as a matter of law. The court failed to analyze whether the prosecution had successfully presented "believable evidence of all the elements of the crime charged," as required by *Commonwealth*, 2020 MP 22 ¶ 24. Instead, the court impermissibly elevated the burden of proof and discredited the prosecution's witnesses, thereby going beyond the limited scope of a preliminary hearing. *See id.* ("the judge at [a preliminary hearing] does not make findings of fact regarding disputed evidence, merely whether the prosecution has met its burden to show evidence that, if believed, suffices as a matter of law to satisfy each element of the charged offense."). Indeed, we have already held that a detective's testimony about conversations with a sexual assault victim can suffice to establish probable cause, even without corroborating physical evidence. *See id.* ¶ 25 ("Here, [Officer Dela Cruz's] testimony on direct examination meets that bar [of probable cause] without reference to any tangible materials or documents."). By dismissing the charges, the trial court ignored precedent and conflated the preliminary hearing standard with the standard of guilt applicable at trial. *See Virgin*, 137 P.3d at 792. We are left with a firm conviction that the trial court erred and that no substantial legal argument can be made in favor of its ruling. *In re Buckingham*, 2012 MP 15 ¶ 10; *Liu v. Commonwealth*, 2006 MP 5 ¶ 19.

### B. The Prosecution Has No Other Means to Obtain Relief

¶ 24    Regarding the remaining *Tenorio* factors, Frink concedes that the first factor—whether the party seeking the writ has other means, such as a direct appeal, to obtain the desired relief—lies in favor of the prosecution in this case. Respondent's Answering Brief to Commonwealth's Petition for Writ of Mandamus, at 12 ("Mr. Frink concedes the proesecution [sic] has no other means to obtain relief such as a direct appeal."). The prosecution cannot appeal the ruling because a determination of probable cause is not a final judgment granting jurisdiction for an appeal. *Commonwealth v. Crisostimo*, 2005 MP 18 ¶ 17.

### C. The Prosecution Will Be Damaged in a Way Not Correctable on Appeal

¶ 25    The second factor is whether the prosecution will be damaged or prejudiced in a way not correctable on appeal if the writ does not issue.

*Commonwealth*, 2020 MP 22 ¶ 10. The prosecution argues this factor is met because, since it cannot appeal the court's ruling, it cannot correct the court's erroneous ruling. The defendant and the trial court disagree, claiming that, because the dismissal without prejudice means the prosecution is free to re-file the charges.

¶ 26     This case parallels *In re Commonwealth*, 2015 MP 7. In that case, a defendant was charged with several counts of sexual misconduct. *Id.* ¶ 1. After the preliminary hearing, the trial court found no probable cause for Sexual Assault in the First Degree, reasoning that the statute was inapplicable as a matter of law because the victim was 16 years old and the perpetrator was 18. *Id.* Like in this case, the Commonwealth petitioned for a writ of mandamus. *Id.* In analyzing the second *Tenorio* factor, we first noted that a determination of no probable cause is not a final judgment and that the prosecution remained free to re-file. *Id.* ¶ 19. Nonetheless, the Court concluded that the prosecution had been damaged in a way not correctable on appeal: "re-filing will likely prove futile because the finding of no probable cause was premised on an erroneous interpretation of the law . . . the trial court's brief clearly shows that it will not reconsider and change its interpretation of the law." *Id.*

¶ 27     In another recent mandamus case, the trial court dismissed a prosecution for assault and battery without prejudice after an initial appearance, reasoning that the criminal complaint was deficient because it had an electronic signature. *In re Commonwealth*, 2022 MP 5 ¶¶ 4–5. The Commonwealth then petitioned for a writ of mandamus. We find that the Commonwealth had been damaged in a way not correctable on appeal. *Id.* ¶ 14. While the prosecution remained free to re-file the case, the issue of whether electronic signatures are valid would evade review; if the Commonwealth were to use an electronic signature, the case would be dismissed, and, if the Commonwealth used a physical signature, the issue would not be addressed. Accordingly, the appeal process could not correct the court's error, meaning that issuing a writ of mandamus would be appropriate. *Id.* ¶ 15.

¶ 28     As in these previous mandamus cases, the prosecution may re-file the charges. However, the prosecution will be hard-pressed to gather sufficient evidence to overcome the erroneous probable cause interpretation the trial court applied. The defendant is unlikely to serve as a source for additional evidence; he invoked his right to remain silent when approached by Officer Dela Cruz, and he has left the Commonwealth. *See* Appendix at 31; Petition, at 18. The victim has already spoken—twice—with Dela Cruz and given the full details of her account. Moreover, Dela Cruz has testified to the results of the Sexual Assault Nurse Examination as well as to conversations she had with the ship captain and the officer to whom the victim first reported the incident. *See* Appendix at 29-30. As a result, there are few, if any, individuals with personal knowledge of the incident who could provide additional evidence at another preliminary hearing.

¶ 29     The trial court's erroneous application of the probable cause standard has rendered the prosecution essentially unable to proceed with this case. All

available medical testimony has already been brought to the court's attention through Officer Dela Cruz's. In addition, the details of the alleged sexual assault have already been presented to the court, and there are no additional witnesses with knowledge of that incident that could be called to testify. Accordingly, like in *In re Commonwealth*, 2015 MP 7 ¶ 19, re-filing the charges would likely be "futile."

¶ 30    The Superior Court's Answer in this case demonstrates that it remains committed to its erroneous interpretation of the probable cause standard. The court argues that "there was no credible evidence brought before the Court that would support a finding of Probable Cause that Frink committed sexual intercourse with Milsap without her consent." Answer, at 7. This statement ignores the testimony presented at the hearing that Frink forcibly thrust the victim's legs apart, removed her clothing, and prevented her from escaping by pinning her to the mattress. *See supra* ¶¶ 3-4. The trial court's position contradicts binding precedent from this Court and the highly persuasive body of law from other states, all of which clearly provide that a trial court is not to make credibility determinations at the preliminary hearing phase. *See Commonwealth*, 2020 MP 22 ¶ 24 ("The judge at this stage does not make findings of fact regarding disputed evidence, merely whether the prosecution has met its burden to show evidence that, if believed, suffices as a matter of law to satisfy each element of the charged offense."); *Virgin*, 138 P.3d at 793 ("[M]agistrates [at a preliminary hearing] must leave all the weighing of credible but conflicting evidence to the trier of fact and must view the evidence in a light most favorable to the prosecution, resolving all inferences in favor of the prosecution."). Because the trial court has already rejected the credibility of Milsap's account, re-filing the case would likely lead to dismissal at the preliminary hearing stage once again. We hold that the second *Tenorio* factor weighs in favor of the prosecution.

### D. The Superior Court's Order is an Oft-Repeated Error

¶ 31    The fourth *Tenorio* factor is whether the lower court's order is an oft-repeated error or manifests a persistent disregard of applicable rules. *In re Commonwealth*, 2022 MP 5 ¶ 11. This is not the first time the Commonwealth has sought a writ of mandamus following dismissal at the preliminary hearing stage. *See In re Commonwealth*, 2018 MP 8. Indeed, we previously granted mandamus relief in prior cases dealing with other aspects of preliminary hearings. In *Commonwealth*, 2020 MP 22, this Court found clear error in ordering the production of all relevant material for presentation at a preliminary hearing because the order amounted to an improper creation of an "expansive" right that had no basis in the plain language of the statute or its legislative history. *Id.* ¶ 20. Additionally, in *In re Commonwealth,* 2015 MP 7, this Court issued a writ of mandamus correcting an erroneous interpretation of the Commonwealth's sexual assault statutes. That case involved the dismissal of charges after the preliminary hearing, mistakenly concluding that legislative amendments precluded prosecution where the offender is eighteen years old and the victim is sixteen. *Id.* ¶ 1. This case marks yet another instance of an erroneous ruling after a

preliminary hearing in a sexual assault prosecution. Accordingly, we hold that the fourth factor favors the Commonwealth.

### *E. The Superior Court's Order Raises Important Issues of Law*

¶ 32     The final *Tenorio* factor is whether the lower court's order raises new and important problems, or issues of law of first impression. *Commonwealth*, 2020 MP 22 ¶ 10 (citing *Tenorio v. Superior Court*, 1 NMI 1 9–10 (1989)). While we have issued rulings detailing the proper scope and focus of preliminary hearings, *see* 2020 MP 22; 2018 MP 8, those cases dealt with the interpretation of statutes covering discovery and the elements of sexual abuse of a minor. The current case goes to the heart of the probable cause standard. It requires this Court to determine how the trial court should evaluate prosecutions where facts are disputed. It also gives an opportunity to explain further the extent to which the trial court at a preliminary hearing can weigh evidence and evaluate witness credibility. Consequently, the fifth and final *Tenorio* factor is satisfied.

### *F. The Commonwealth's Arguments Concerning Bias and Improper Admission of Testimony are Without Merit*

¶ 33     We find the prosecution's other assignments of error to be without merit. The prosecution contends that the court demonstrated "bias" by "coaching" defense counsel to file for a *Franks* hearing. Petition, at 14. The full exchange is as follows:

> The Court: Mr. Thompson, based on just initial portions of the testimony and some of the testimonies from the officer in regards to the arrest warrant—I'm saying this so Ms. Demapan also hears it— I know it's short for you. Are you probably going to eat lunch, both of you counsels. I would encourage for you to come back at lease [sic] maybe have an opportunity to review what is sometimes referred to as a *Franks* hearing, because I'm hearing that between this preliminary, which has a different objective, right, whether or not there's probable cause. But, a *Franks* hearing is different. I know it's been awhile but I do remember back then DPS, now this chief (indiscernible) went to a similar one like that. I think Judge Govendo was the one who presided that, so can—read up on it so you—

> Mr. Thompson: Mm-mm.

> The Court: Okay. I can only decide the preliminary hearing, because that's in front of me, but I'll leave it up to you whether you want to—

> Mr. Thompson: Thank you, Your Honor.

> The Court:--file something to that effect.
> Appendix, at 55–56.

The Commonwealth does not contend that this exchange, standing alone, constitutes an error warranting mandamus relief. Instead, it argues that the comments demonstrate the court's skepticism toward Officer Dela Cruz's testimony, thereby providing further reason for this Court to hold that the trial court made an improper credibility determination. However, the Commonwealth did not cite any caselaw or otherwise elaborate on the standard applicable to this claim. Because the Commonwealth did not substantiate its argument on this point and because this matter does not affect our conclusion that mandamus relief is warranted under the *Tenorio* factors, we decline to address this issue.

¶ 34    In addition, the Commonwealth contends for the first time in its petition that the trial court erred in not excluding the testimony of the Defendant's private investigator, who testified to conversations he had with individuals who saw Frink and Milsap that night and to physical evidence he observed in the hotel room. In general, this Court does not review arguments raised for the first time on appeal, *Demapan v. Bank of Guam*, 2006 MP 16 ¶ 9, and the Commonwealth has failed to show that any of the "narrow exceptions" to this rule should apply here. *See id.*

¶ 35    We conclude that the trial court's Order Finding No Probable Cause on Counts I-V, dated November 23rd, 2022 should be vacated under our authority to issue writs of mandamus. *See* NMI SUP. CT. R. 21. Since that Order dismissed the charges against Frink, its vacatur means that the charges are reinstated. Nonetheless, we decline to issue a finding of probable cause. Such a determination falls within the ambit of the trial court. In *Commonwealth*, we issued a writ of mandamus after the trial court erred in issuing an impermissibly overbroad discovery order. 2020 MP 22 ¶ 29. In that case, we vacated the discovery order but remanded for another preliminary hearing. *Id.* A subsequent hearing was necessary to ensure compliance with the evidentiary disclosure standards announced in our decision. *See id.* Here, however, another preliminary hearing would be largely duplicative of the previous hearing: presumably, the same witnesses would be called, substantially similar questions would be asked, and the same evidence would be evaluated. This Court is sensitive to the concerns of judicial economy, which seeks to preserve "efficiency in the operation of the courts and the judicial system; especially, the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources." *Joeten Motor Co. v. Guerrero*, 2020 MP 14 ¶ 17. Upon review of the transcript of the preliminary hearing, the trial court is to make a probable cause determination according to the evidence already presented and the standards articulated in this Order.

## IV. CONCLUSION

¶ 36    For the foregoing reasons, the Commonwealth's Petition for a writ of mandamus is GRANTED, and the trial court's Order Finding No Probable Cause on Counts I–V is VACATED. Accordingly, the charges against Frink are reinstated and the trial court shall, without further delay, evaluate probable cause in a manner consistent with this Order.

*In re Commonwealth*, 2023 MP 5

So Ordered this 1st day of June, 2023.


 /s/
ALEXANDRO C. CASTRO
Chief Justice


 /s/
JOHN A. MANGLOÑA
Associate Justice


 /s/
PERRY B. INOS
Associate Justice

COUNSEL

J. Robert Glass, Jr., Saipan, MP, for Petitioner.

Colin M. Thompson, Saipan, MP, for Respondent.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.com.